David B. Miller
Texas Bar No. 00788057
david@schneidlaw.com
SCHNEIDER MILLER REYNOLDS, P.C.
300 N. Coit Road, Suite 1125
Richardson, Texas 75080
Telephone:     (972) 479-1112
Facsimile:      (972) 479-1113

T. Micah Dortch
Texas Bar No. 24044981
micah@dll-law.com
Dortch Lindstrom Livingston Law Group
2613 Dallas Parkway, Suite 220
Plano, TX  75093
Telephone:  214-252-8258
Facsimile:  888-653-3299

*Special Counsel for the Trustee Areya Holder Aurzada*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** § | **CASE NO. 22-30500-swe7** |
| **DENNIS JAMES ROGERS II,** § | |
| Debtor. § | **CHAPTER 7** |

| | | |
|---|---|---|
| **AREYA HOLDER AURZADA,** § | |
| **CHAPTER 7 TRUSTEE FOR THE** § | |
| **BANKRUPTCY ESTATE OF** § | |
| **DENNIS JAMES ROGERS II** § | |
| Plaintiff, § | |
| § | |
| v. § | **Adversary No. 24-03028** |
| § | |
| **FUNDERZ.NET, LLC,** § | |
| Defendant. § | |

## AMENDED COMPLAINT TO AVOID AND RECOVER
## FRAUDULENT TRANSFERS

**COMES NOW**, Areya Holder Aurzada ("Trustee" or "Plaintiff") in her capacity as Chapter

7 Trustee for Dennis James Rogers II ("Debtor" or "Rogers") and files this her *Amended Complaint*

AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS                                                    Page 1

*to Avoid and Recover Fraudulent Transfers* (the "Amended Complaint") and, in support, would respectfully show the Court as follows:

## NATURE OF THE ACTION

1. This adversary proceeding is brought by the Trustee against Funderz.net, LLC ("Funderz" or "Defendant") to avoid and recover an actual and/or constructive fraudulent transfer made by the Debtor to the Defendant.

## PARTIES

2. Plaintiff is the duly appointed trustee of the Debtor in the above-captioned bankruptcy case.

3. Funderz has been served, has filed a Motion to Dismiss [Dkt. 5] and may be served through its counsel of record.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") because the claims and causes of action asserted in the Complaint arise under Title 11 of the U.S. Code (the "**Bankruptcy Code**") and arise in and are related to a case filed under title 11 and pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division under Case No. 22-30500.

5. Funderz regularly conducts business in this state and specifically engaged with Texas residents regarding the subject matter of these claims.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The claims and causes of action set forth herein concern the avoidance and recovery of claims under 11 U.S.C. §§ 544, 548 and 550, *inter alia*, of the Bankruptcy Code. Accordingly,

this adversary proceeding is a "core" proceeding to be heard and determined by the Bankruptcy Court pursuant to 28 U.S.C. § 157(b).

8. The Plaintiff consents to entry of final orders by the Bankruptcy Court for all matters over which the Court has jurisdiction in this proceeding.

## BANKRUPTCY PROCEEDING

9. On March 22, 2022, an involuntary petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code. On March 28, 2022, this Court entered an order for the United States Trustee to appoint an interim Chapter 7 Trustee (Dkt. No. 16). Thereafter, the Trustee was appointed as the interim Chapter 7 Trustee. On April 26, 2022, this Court entered an order for relief against the Debtor under Chapter 7 (Dkt. No. 33). The Trustee continues to serve as the permanent Chapter 7 Trustee.

## BACKGROUND

A. **Rogers and the Shell Entities**

10. In 2017 and 2018, Rogers set up at least five (5) different shell corporations – Organ Mountain Energy, LLC; OMTC, Inc.; Nomad Development, LLC; Bootstrap Ventures, LLC, and Push Start Industries, LLC (collectively, the "Shell Entities").

11. Rogers was the sole owner of the Shell Entities. Investigation to date indicates no employees in any of the Shell Entities. Other than the original operating agreements, there are only a handful of corporate records of any type.

12. The banking records indicate that there was literally no distinction between or among the deposits and distributions made from Rogers' personal accounts and the accounts of the Shell Entities. Rogers and the Shell Entities used six different banks or brokerage firms. Rogers and the Shell Entities had 28 traditional banking accounts and another 20 brokerage accounts. On a weekly

if not daily basis, Rogers transferred money between Shell Entity accounts and his personal account. The Shell Entities paid each other's debts and expenses and paid Rogers' debts and expenses. Even suggestions of any material underlying business in the bank records has proven to be false. By way of example, OMTC had significant transfers to and from an entity named Site Development Group. The CEO of Site Development Group recently reached a plea agreement in California for securities fraud and, of course, running a Ponzi scheme.

13. Without acknowledging that it is necessary under the facts and causes of action contained herein, the Trustee pleads that each Shell Entity functioned as an alter ego of Dennis Rogers. Specifically, each Shell Entity was organized and operated as a mere tool or business conduit for Rogers, there was such unity between the Shell Entities and Rogers that the separateness of the corporations ceased, and holding only the corporations liable would result in an injustice. *See, e.g.*, *Durham v Accardi*, 582 S.W.3d 179, 185 (Tex. App.-Houston [14th Dist.] 2019, no pet.).

**B.    How the Scheme Worked**

14. For reasons understood only by those who have run Ponzi schemes, Rogers thought using the Shell Entities to conduct a Ponzi scheme and launder money was a good idea. Rogers pitched two fraudulent products – (1) buying and selling water rights and (2) flipping fuel that he claimed he could purchase wholesale or at auction. (The water rights product was likely a function of the fact that Dennis Rogers, *Sr.* had experience and success in selling water rights. Rogers was happy to have investors think he was his father.)

15. The investment was typically documented by a promissory note, loan agreement, or purchase order, with one of the Shell Entities and a guaranty by Rogers. The investments shared the common denominator of a promise for potential quick and significant return.

16. In fact, however, there was no business that appears to have generated any income. There appear to be no water rights and no fuel contracts. Instead, early investors were paid back by later investors and those payments to early investors then spawned additional investors or a second investment from the same investor. By way of example, Anthony and Joanne Capano, Ellis Guilbeau, Kenneth Guilbeau, John and Rhonda Harris, John Hughes, and Troya Montgomery received payments on their investments. Some investors received payments, made additional investments and, thus, remain creditors of Rogers. At no time did Rogers or the Shell Entities have the ability to pay investors absent perpetuating the fraud getting money from new investors. That Rogers turned to a hard money lender like Funderz to keep the scheme alive is not surprising.

17. Rogers has plead guilty to securities fraud and admitted that he used funds from investors to pay other investors, purchase real estate, and pay his personal expenses. "See Exhibit 1 Factual Resume of Dennis Rogers in Case No. 3-24CR0170-K. Exhibit 1 is included as a public record to show background facts consistent with the Amended Complaint and not intended to convert any Motion to Dismiss into a motion for summary judgment. *See, e.g., Little Gem Life Sciences, LLC v. Orphan Med. Inc.*, 537 F.3d. 913, 916 (8th Cir. 2008).

C. **Funderz Invests and Recovers**

18. Funderz may be accurately described as a "hard money" lender that attracts desperate people looking for a lack of scrutiny.

19. In 2019, Funderz agreed to provide funds to OMTC for the purchase of ultra-low sulfur diesel fuel. Funderz and OMTC executed a series of promissory notes with collateral assignments, security agreements, and guarantees from Rogers. The loans had extraordinary fees. Indeed, Funderz admits that it loaned $10,000,000.00 and recovered at least $11,5000,000.00 and,

remarkably believes it has been "duped" by Rogers and should have recovered in excess of $15 million.

20. The repayment of the principal loan proceeds is the "Principal Transfer". The repayment of any amount beyond the principal is the "Interest Transfer." Collectively, the "Principal Transfer" and the "Interest Transfer" are the "Transfers." The payment of the Transfers was consistent with the unity between Rogers and the Shell Entities. Funderz was paid back from seven different accounts including two different Rogers' personal accounts. The bulk of the Funderz' repayments came from Bootstrap.

21. From bank records the Trustee has reviewed to date, Funderz received multiple payments from on or about January 27, 2020 through at least August 12, 2020 with the bulk of payments being within two years of the original Complaint. Funderz or its counsel received payments from:

Chase acct ending in 1503 styled "Dennis J. Rogers Checking" $4,875,000.00.00

Goldman acct ending in 3052 styled "Dennis Rogers Trade Account'' $1,000,000.00

Frost acct ending in 9321 styled "Dennis J. Rogers Personal Account" $500,000.00

Chase acct ending in 8315 styled "Bootstrap Ventures, LLC Checking" $2,350,000.00

Chase acct ending in 7879 styled "OMTC, Inc. Checking" $1,250,000.00

Chase acct ending in 8909 styled "Organ Mountain Energy, LLC" $15,524.00

Frost acct ending in 2223 styled "OMTC, Inc. Checking" $200,000.00

These payments total less than the $11.5 million Funderz has repeatedly acknowledged receiving. Funderz, of course, has the details of all payments received from Rogers or the Shell Entities. To be clear, the Trustee seeks recovery of interest and principal from the transfers above and any other

transfer Funderz received from Rogers or the Shell Entities arising out of the scheme and loans described herein.

### D. The Ponzi Presumption and Inquiry Notice

22. Texas and the Fifth Circuit recognize that:

> When a Ponzi scheme is involved, however, courts applying TUFTA analogues have bypassed the statutory badges-of-fraud analysis in favor of a conclusive presumption that transfers in furtherance of the scheme were made with actual intent to defraud. Such transfers are fraudulent per se, the theory goes, based on the enterprise's illegality and incipient insolvency, which is also conclusively presumed.

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 566, 567 (Tex. 2016).

The Trustee affirmatively pleads that for any cause of action that may require actual fraudulent intent as an element or condition, the Ponzi presumption should apply in this case.

23. Interest is not payment of an antecedent debt, reasonably equivalent value or any value at all. *See, e.g. Janvey v. Brown,* 767 F.3d 430, 439-44 (5th Cir. 2014). Repayment of principal may be recovered when a party "takes property with knowledge of such facts that would excite the suspicions of a person of ordinary prudence …regarding the fraudulent nature of an alleged transfer." *See Janvey v. GMAG, LLC* 592 S.W. 3d 125, 130 (Tex. 2019) (citations omitted). There is no good faith or other defense under this "inquiry notice" standard. Further, it does not appear that the recovery of principal is limited to inquiry notice of a Ponzi scheme, but inquiry notice of "the fraudulent nature" of the transfer. *Id.*

24. Circumstances, even before any discovery in this case, show that Funderz was on inquiry notice. The bulk of the Transfers was made after Funderz filed suit against Rogers and OMTC in Dallas County state court. At that time, there were multiple other suits pending against Rogers and the Shell Entities in Dallas County and other venues. Funderz, even before conducting discovery and finding very specific evidence of a fraudulent scheme as set out in their amended petitions in state

court, knew that Rogers never purchased the diesel fuel referenced in the loans and, instead, used their cash for other purposes. At some later point, as set forth in their amended petitions, Funderz specifically knew that Rogers used their funds to pay other investors and state so in sworn pleadings. Indeed, Funderz had the bank records showing that activity.

## CAUSES OF ACTION

### A. Avoidance of Actual Fraudulent Transfers—11 U.S.C. § 548(a)(1)(A)

25. The Trustee incorporates the allegations contained in the preceding paragraphs of the Complaint as if set forth fully herein. The Trustee asserts that the Ponzi Presumption applies and actual fraud is conclusively presumed.

26. Much of the Transfers was paid by the Debtor within 2 years of the Petition Date with actual intent to hinder, delay, or defraud the Debtor's other creditors.

27. By reason of the foregoing, the Trustee is entitled to an order and judgment that any of the Transfers paid within 2 years of the Petition date is avoided under section 548 of the Bankruptcy Code.

28. Pleading in the alternative, in the event that actual fraud is not conclusively presumed, the Trustee pleads that (1) Rogers and the Shell Entities were insolvent on the date the transfers were made or became insolvent as a result of the transfer or obligation. Specifically, Rogers and the Shell Entities had no underlying business, only a pile of obligations; (2) Rogers knew that he was creating debt that he would be unable to pay back (3) Rogers and the Shell Entities had been sued multiple times and knew other suits were on the way and (4) the general chronology of events and transactions as set forth herein show that Rogers made payments solely to keep the Ponzi scheme alive.[1]

---

[1] The Fifth Circuit has not determined whether the heightened pleading standard of Rule 9(b) applies to fraudulent transfer claims, but numerous district courts have held that it does not. *See, e.g.*, *Janvey v. Alguire*, 846 F. Supp. 2d 662, 675-

B. **Avoidance of Constructive Fraudulent Transfers—11 U.S.C. § 548(a)(1)(B)**

29. The Trustee incorporates the allegations contained in the preceding paragraphs of the Complaint as if set forth fully herein.

30. Much of the Transfers was paid by the Debtor within 2 years of the Petition Date, and the Debtor received less than a reasonably equivalent value in exchange for such transfer or obligation. Interest is not payment of an antecedent debt, reasonably equivalent value or any value at all. *See, e.g. Janvey v. Brown,* 767 F.3d 430, 439-44 (5th Cir. 2014). Because the Transfers were premised on maintenance and perpetuation of a fraudulent scheme, they did not contribute any value in exchange for the monies and other assets they received.

31. Moreover, Rogers and the Shell Entities had been both sued and threatened with suit, and Rogers and the Shell Entities as a whole, were insolvent on the date that the Transfers were made and intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

32. By reason of the foregoing, the Trustee is entitled to an order and judgment that any of the Transfers paid within 2 years of the Petition date is avoided under section 548 of the Bankruptcy Code.

33. Again, pursuant to the Inquiry Notice standard, the Trustee seeks both the Interest Payments and the Principal payments.

---

76 (N. D. 2011). In any event, the (1) "who"- Dennis Rogers (2) what- misrepresentations of water rights and oil and gas ventures (3) "when" between 2017 and 2022 (3) "where" in promissory notes, and other documents and (4) "how" – fraudulent because Rogers never actually has the underlying water rights or other products, are established.

    **C.    Avoidance of Actual Fraudulent Transfers—Tex. Bus. & Comm. Code § 24.005(a)(1) through 11 U.S.C. §§ 544(b)(1)**

34.    The Trustee incorporates the allegations contained in the preceding paragraphs of the Complaint as if set forth fully herein.

35.    Under 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor that is avoidable under applicable state law by a creditor holding an unsecured claim allowable under 11 U.S.C. § 502.

36.    At the time the Transfers were made, other creditors of the Debtor held unsecured claims allowable under 11 U.S.C. § 502.

37.    As such, the Trustee moves to avoid the Transfers because the Transfers could have been avoided by the Debtor's other creditors under Texas fraudulent transfer law. *See* TEX. BUS. & COM. CODE § 24.005(a)(1), including, but not necessarily limited to, Debra Van Cleve, Angela Garbiso, and Steven Webster.

38.    Because Rogers and the Shell Entities operated as a Ponzi scheme, Texas law provides that the Transfers were made with an actual intent to hinder, delay, or defraud creditors.

39.    In the alternative, the Transfer was made with the actual intent to hinder, delay, or defraud the Debtor's other creditors because, among other things:

    (a)    before the Transfer was made, the Debtor had been sued or threatened with suit;

    (b)    the Debtor was insolvent or became insolvent shortly after the Transfer was made or the obligation was incurred; and

    (c)    the Transfer consisted of monies obtained through the fraud of the Debtor and the Debtor's other creditors.

40.    By reason of the foregoing, the Debtor's other creditors have the right to avoid the Transfers under Section 24.005(a)(1) of the Texas Business and Commerce Code, and the Trustee

can seek to enforce that right under section 544(b)(1) of the Bankruptcy Code. The Trustee is therefore entitled to recover all assets wrongfully transferred to the Defendants in the form of the Transfers. To be clear, the Trustee seeks to avoid and recover the Interest Transfer and the Principal Transfer as Funderz was on Inquiry Notice of the fraudulent nature of the transaction.

> **D.** **Avoidance of Constructive Fraudulent Conveyances—Tex. Bus. & Comm. Code § 24.005(a)(2) through 11 U.S.C. §§ 544(b)(1)**

41. The Trustee incorporates the allegations contained in the preceding paragraphs of the Complaint as if set forth fully herein.

42. Under 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor that is avoidable under applicable state law by a creditor holding an unsecured claim allowable under 11 U.S.C. § 502.

43. At the time the Transfers were made, other creditors of the Debtor held unsecured claims allowable under 11 U.S.C. § 502, including, but not necessarily limited to, Debra Van Cleve, Angela Garbiso, and Steven Webster.

44. As such, the Trustee moves to avoid the Transfers because the Transfers could have been avoided by the Debtor's other creditors under Texas fraudulent transfer law. *See* TEX. BUS. & COM. CODE § 24.005(a)(2).

45. The Debtor did not receive reasonably equivalent value in exchange for the Transfers. Because the Transfers were premised on maintenance and perpetuation of a fraudulent scheme, they did not contribute any value in exchange for the monies and other assets they received. Interest is not payment of an antecedent debt, reasonably equivalent value or any value at all. *See, e.g. Janvey v. Brown,* 767 F.3d 430, 439-44 (5th Cir. 2014).

46. Before the Transfers, Rogers and the Shell Entities had been sued and threatened with suit.

47. Rogers and the Shell Entities were insolvent or became insolvent shortly after the Transfers.

48. At the time the Transfers were made, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

49. At the time the Transfers were made, the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

50. By reason of the foregoing, the Debtor's other creditors have the right to avoid the Transfer under Section 24.005(a)(1) of the Texas Business and Commerce Code, and the Trustee can seek to enforce that right under section 544(b)(1) of the Bankruptcy Code. The Trustee is therefore entitled to recover all assets wrongfully transferred to the Defendants in the form of the Transfers. To be clear, the Trustee seeks to avoid and recover the Interest Transfer and the Principal Transfer as Funderz was on Inquiry Notice of the fraudulent nature of the transaction.

**E.** **Recovery of Fraudulent Transfers—11 U.S.C. § 550(a)**

51. The Trustee incorporates the allegations contained in the preceding paragraphs of the Complaint as if set forth fully herein.

52. Pursuant to 11 U.S.C. § 550(a), to the extent that a transfer is avoided under 11 U.S.C. §§ 544 and 548, *inter alia*, the Trustee may recover for the benefit of the Bankruptcy Estate the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose such transfer was made or (b) any immediate or mediate transferee of such initial transferee.

53. The Defendant in this case is either the (a) initial transferee of the Transfer, the entity for whose benefit the Transfer was made, or (b) an immediate or mediate transferee of the initial transferee.

54. By reason of the foregoing, the Trustee is entitled to recover the Transfers under section 550(a) of the Bankruptcy Code for the benefit of the Debtor's estate and creditors. To be clear, the Trustee seeks to avoid and recover the Interest Transfer and the Principal Transfer as Funderz was on Inquiry Notice of the fraudulent nature of the transaction.

**F.     Unjust Enrichment**

55. The Trustee incorporates the allegations contained in the preceding paragraphs of the Complaint as if set forth fully herein.

56. Based on principles of justice, equity, and good conscience, the Defendant has been unjustly enriched by the Transfers. The Transfers caused the Defendant, whether intentional or unintentional, to receive money or other interests that belonged to the Debtor (for the benefit of its creditors) for no reasonably equivalent value.

57. The Defendant benefitted from Rogers' fraudulent conduct. It would be fundamentally unfair to allow the Defendant to retain funds that rightfully belong to the Bankruptcy Estate while the Debtor's other defrauded creditors seek to recover little of their original investments.

58. The Transfers involved actual fraud and malice on the part of Rogers. The funds used for the Transfers to the Defendant are directly traceable to the Debtor's other creditors in the Ponzi scheme.

59. By reason of the foregoing, the Transfers should be disgorged and paid to the Trustee to enable the Bankruptcy Estate to satisfy its obligations to the Debtor's creditors.

### G. Attorney's Fees

60. Under the applicable Texas fraudulent transfer law, the Court may award costs and reasonable attorney's fees "as are equitable and just." *See* TEX. BUS. & COMM. CODE § 24.013.

61. By reason of the foregoing, the Trustee is entitled to recover her costs and reasonable attorney's fees in her claims against the Defendant.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, Areya Holder Aurzada, respectfully prays that this Court:

(a) Enter judgment in the Trustee's favor on all cause of action asserted in the Complaint;

(b) Avoid the Transfers as actual and constructive fraudulent transfers under Section 548 of the Bankruptcy Code;

(c) Avoid the Transfers as actual and constructive fraudulent transfers under sections 24.005(a)(1) and 24.005(a)(2) of the Texas Business and Commercial Code through Section 544(b)(1) of the Bankruptcy Code;

(d) Award the Trustee judgment against Defendant in the amount of $11,500,000.00 or such amount as proven at trial under Section 550 of the Bankruptcy Code;

(e) Award the Trustee judgment against Defendant for unjust enrichment in the amount of $11,500,000.00 or such amount as proven at trial;

(f) Award the Trustee judgment against Defendant for all costs of suit incurred herein, including attorney's fees pursuant to section 24.013 of the Texas Business and Commercial Code;

(g) Award the Trustee pre- and post-judgment interest on the judgment amount to the fullest extent allowed by applicable law; and

(h) For such other and further relief as the Court may deem just and proper.

Dated: April 26, 2024					Respectfully submitted,

          By: */s/ David B. Miller*
          David B. Miller
          Texas Bar No. 00788057
          david@schneidlaw.com
          SCHNEIDER MILLER REYNOLDS, P.C.
          300 N. Coit Road, Suite 1125
          Richardson, Texas 75080
          Telephone: (972) 479-1112
          Facsimile: (972) 479-1113
          And

          */s/ T. Micah Dortch*
          T. Micah Dortch
          micah@dll-law.com
          Dortch Lindstrom Livingston Law Group
          2613 Dallas Parkway, Suite 220
          Plano, TX 75093
          Telephone: 214-252-8258
          Facsimile: 888-653-3299

***Special Counsel for the Trustee***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 22, 2024, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas by electronic mail.

          By: */s/ T. Micah Dortch*
          T. Micah Dortch