Case 24-03028-swe    Doc 20-1    Filed 07/22/24    Entered 07/22/24 17:11:44    Desc
Exhibit lem1 5a   Filed 05/02/24   Page 1 of 7   PageID 20
Case 3:24-cr-00170-K Document 15 Filed 05/02/24 Page 1 of 7



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3-24CR0170-K |
| DENNIS JAMES ROGERS II | |

### FACTUAL RESUME

In support of **Dennis James Rogers' II** plea of guilty to the offenses in Counts One and Two of the Information, **Rogers** (the defendant), Daniel K. Hagood (the defendant's attorney), and the United States of America (the government) stipulate and agree to the following:

### ELEMENTS OF THE OFFENSE

To prove the offenses alleged in Counts One and Two of the Information, charging violations of 15 U.S.C. §§ 77q and 77x, that is, securities fraud, the government must prove each of the following elements beyond a reasonable doubt:

*First*:   That the defendant offered or sold securities and either

(1) employed any device, scheme, or artifice to defraud; or

(2) obtained money or property by means of any untrue statements of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon a purchaser;

*Second*:   That the defendant acted willfully, knowingly, and with the intent to defraud;

**Factual Resume (Rogers)—Page 1 of 7**

*Third*:   That the defendant used, or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the scheme.[1]

## STIPULATED FACTS

1. Starting in or about August 2019 and continuing until at least 2022, the defendant, **Dennis James Rogers II**, in connection with the offer and sale of securities, to wit: investment contracts for participation in various investment programs, by use of instruments of transportation and communications in interstate commerce, knowingly and willfully, directly and indirectly, employed a scheme and artifice to defraud, and obtained money by means of untrue statements of material facts and omissions to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, did engage in transactions, practices and a course of business which operated as a scheme to defraud persons who entered into investment contracts for participation in various investments including oil and gas offerings and a water rights offering.

2. In furtherance of the scheme and artifice to defraud, **Rogers** utilized a series of companies, which he owned or operated, to entice and solicit individuals to invest in various fraud schemes. **Rogers'** companies included Oregon Mountain Trading Company, Inc. (OMTC), and Bootstrap Ventures, Inc. (Bootstrap Ventures), both

---

[1] *United States v. Lewis*, 774 F.3d 837, 841 (5th Cir. 2014)

**Factual Resume (Rogers)—Page 2 of 7**

companies incorporated in Texas and with their principal place of business located at 1920 McKinney Avenue, Floor 7, Dallas, Texas, in the Northern District of Texas.

3.  **Rogers** admits that on or about August 2019, **Rogers** solicited investor J.I. to invest in a fraudulent oil and gas investment.[2] **Rogers** utilized OMTC to facilitate the fraud scheme. **Rogers** told J.I. that he was soliciting funds for the purchase of fuel from Company A, a fuel company known to the United States Attorney. In furtherance of the fraud scheme and to entice J.I to invest, **Rogers** traveled from Dallas-Ft. Worth International Airport to New York via commercial airline and met with J.I. in 2019. During the meeting with J.I., **Rogers** showed J.I. documentation, specifically, a contract and email correspondence, which represented that **Rogers** had access to fuel held by Company A.

4.  Based upon the representations by **Rogers** for the purchase of fuel from Company A, J.I. agreed to loan **Rogers** $10,000,000 in exchange for an agreement between J.I. and **Rogers**. wherein J.I. would receive a fifty-percent return on the loan agreement.

5.  **Rogers** admits that the funds obtained from J.I. were not utilized to purchase fuel from Company A; instead, the funds were diverted by **Rogers** to other business entities, an investment account, a law firm, a private jet service, a custom home builder, to credit card companies, and towards **Rogers'** other personal expenses.

---

[2] In accordance with Department of Justice policy, all investors are identified by their initials.

**Factual Resume (Rogers)—Page 3 of 7**

6.      Approximately ten months after defrauding J.I., on or about June 2020, again using OMTC, **Rogers** enticed investors S.W. and D.W. to invest in a fraudulent oil and gas investment. **Rogers** solicited S.W. and D.W by telephone calls and emails to A.W. regarding the proposed investment. **Rogers** told A.W. that Company B, a large international fuel company known to the United States Attorney, was exiting its fuel stock position in Brownsville, Texas. **Rogers** falsely represented that the fuel company was going to dispose of its fuel via an exclusive invitation-only auction and that he was invited to the auction and would purchase fuel for the investors at a profit. As a result of these representations, S.W. and D.W. both executed fuel purchase agreements with **Rogers**. On or about June 2020, S.W. wired **Rogers** approximately $4,100,000 and D.W wired **Rogers** approximately $2,100,000. After S.W. and D.W. wired the funds, **Rogers** failed to provide any fuel to the investors. S.W. and D.W. later learned that Company B never held an auction and, further, that it had no relationship with **Rogers**.

7.      **Rogers** admits that he made materially false representations to an intermediary of S.W. and D.W. in order to entice them into giving him funds for a fictitious auction. **Rogers** further admits he did not have a business relationship with Company B and that the funds obtained from S.W. and D.W. were not used to purchase fuel; instead, the funds were used to fund an unrelated investment account, purchase real estate and to pay **Rogers'** personal expenses.

8.      **Rogers** admits that he devised a third scheme utilizing his company named Bootstrap Ventures. Beginning on or about September 2020, **Rogers** begin soliciting and

collecting funds for a water rights deal associated with a dairy farm in New Mexico. **Rogers** told perspective investors he was working with the dairy farmer to obtain water rights for the farm. **Rogers** represented that he needed funds in order to facilitate the water rights deal with the dairy farmer.

9. In furtherance of the scheme, **Rogers** held a telephone call with an investor in Utah and an alleged member of the dairy farmer family. During the call the alleged family member represented to the investor that the family was working with **Rogers**. In addition, to further entice investors, **Rogers** told multiple perspective investors that he had an account at Investment Firm A, a nationally known investment firm known to the United States Attorney, which had a balance of approximately $5,000,000 that could be used as collateral. In order to facilitate the investment, **Rogers** emailed contract documents and otherwise communicated via email with the investors. After **Rogers** failed to repay the investors it was discovered that **Rogers** never had a relationship with the dairy farmer and there was never a contract for water rights. It was further discovered that the account **Rogers** used as collateral was previously fully collateralized and, therefore, had no collateral value in the fraudulent water rights deal.

10. From approximately July 2019 to October 2020, **Rogers** admits he collected $11,000,000 from investors for the fictitious water rights investment. Rather than utilizing the funds obtained for the water rights investment, **Rogers** used the funds to pay other investors, purchase real estate, and pay **Rogers'** personal expenses.

11.  On or about June 2019, in the Northern District of Texas, the defendant, **Dennis James Rogers II**, in connection with the offer and sale of securities, to wit: an investment contract for the purchase of fuel, by use of instruments of transportation and communications in interstate commerce, knowingly and willfully, directly and indirectly, employed a scheme and artifice to defraud, and obtained money by means of untrue statements of material facts and omissions to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, specifically, represented to an intermediary of victim S.W. that he, **Rogers**, had a contract with a fuel company for the purchase of fuel which he, in fact, did not have, and did engage in transactions, practices and a course of business which operated as a scheme to defraud persons who entered into the investment contract for the purchase of fuel, in violation of 15 U.S.C. §§ 77q and 77x.

12.  On or about September 2020, in the Northern District of Texas, the defendant, **Dennis James Rogers II**, in connection with the offer and sale of securities, to wit: an investment contract for the purchase of water rights, by use of instruments of transportation and communications in interstate commerce, knowingly and willfully, directly and indirectly, employed a scheme and artifice to defraud, and obtained money by means of untrue statements of material facts and omissions to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, specifically, represented to victim J.M. in Utah via the use of interstate emails that he had a contract with a dairy farmer for water rights which

he, in fact, did not have, and further, did engage in transactions, practices and a course of business which operated as a scheme to defraud persons who entered into the investment contract for participation in the purchase of water rights, in violation of 15 U.S.C. §§ 77q and 77x.

13. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offenses charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Counts One and Two of the Information.

AGREED TO AND STIPULATED on this 26th day of April, 2024.

_____
DENNIS ROGERS
Defendant

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_____
MARCUS BUSCH
Assistant United States Attorney
Texas Bar No. 03493300
1100 Commerce, Suite 300
Dallas, Texas 75242
Telephone: 214.659.8642
Facsimile: 214.767.4104
marcus.busch@usdoj.gov

_____
DANIEL K. HAGOOD
Attorney for Defendant

Factual Resume (Rogers)—Page 7 of 7