Carmen Contreras-Martinez (admitted *pro hac vice*)
**SAUL EWING LLP**
701 Brickell Avenue, Suite 1700
Miami, FL 33131
(305) 428-4500
carmen.contreras-martinez@saul.com

-and-

Turner N. Falk   (admitted *pro hac vice*)
**SAUL EWING LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-8415
turner.falk@saul.com

*Counsel to Funderz.Net, LLC*

Michael W. Bishop
Texas Bar No. 02354860
Amber M. Carson
Texas Bar No. 24075610
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135
mbishop@grayreed.com
acarson@grayreed.com

*Counsel to Funderz.Net, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>DENNIS JAMES ROGERS II,<br><br>Debtor. | (Chapter 7)<br><br>Case No. 22-30500-SWE |
| AREYA HOLDER AURZADA, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DENNIS JAMES ROGERS II<br><br>Plaintiff,<br><br>v.<br><br>FUNDERZ.NET, LLC<br><br>Defendant. | Adv. Pro. No. 24-03028-SWE |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

JURISDICTION AND VENUE ........................................................................................... 5

RELEVANT BACKGROUND ............................................................................................ 5

ARGUMENT ....................................................................................................................... 6

    A.  Motion to Dismiss Standard ........................................................................... 6

    B.  The Amended Complaint Does Not Plead a Transfer of the Debtor's Property .... 7

        1.  The Amended Complaint Pleads that Non-Debtors Made the Transfers out of Their Accounts ........................................................................................................ 7

        2.  Under Texas Law an Alter Ego Finding Merely Extends the Parties Liable for the Debtor's Debts, It Does Not Merge the Companies into the Debtor ...................................... 8

    C.  The Actual Fraud Claims are Inadequately Pled ...................................... 10

        1.  The Trustee Pleads No Badges of Fraud ........................................................ 10

        2.  The Trustee Does Not Adequately Plead a Ponzi Scheme ............................ 12

    D.  The Constructive Fraud Claims Fail Because the Amended Complaint Alleges the Transfers Were Made for Reasonably Equivalent Value ........................................... 15

    E.  Funderz Received the Transfers in Good Faith and For Value ............................. 18

    F.  Recovery of the Alleged Transfers under Section 550 Fails because Funderz was the Subsequent Transferee of the Transfers ...................................................................... 19

    G.  The Unjust Enrichment Claim Is Unavailing ........................................................ 20

        1.  The Transfers Were Made on Account of a Contract, so the Trustee Cannot Recover in Quasi-Contract ................................................................................................. 20

        2.  The Amended Complaint Alleges That the Debtor Committed Inequitable Conduct That Bars Equitable Recovery ................................................................................. 21

    H.  The Trustee Cannot Recover Attorney's Fees Because There is No TUFTA Proceeding and Recovery is Set by Section 550 .............................................................. 22

CONCLUSION ................................................................................................................... 24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*American Cancer Soc'y v. Cook*, 675 F.3d 524 (5th Cir. 2012) ................................................9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................................3

*Bustamante v. Johnson (In re McConnell)*, 934 F.2d 662 (5th Cir. 1991) .....................................7

*Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622 (S.D. Tex. 2009) ...........................................15

*Frank v. Ward (In re Ward)*, 557 B.R. 508 (Bankr. N.D. Tex. 2016) ............................................5

*Gardemal v. Westin Hotel Co.*, 186 F.3d 588 (5th Cir. 1999) ........................................................6

*In Life Partners Holding, Inc. v. Cowley*, 926 F.3d 103 (5th Cir. 2019) .......................................7

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) ...............................................................................8

*Janvey v. Brown*, 767 F.3d 430, 439-44 (5th Cir. 2014) ................................................................15

*Jimmy Swaggart Ministries v. Hayes (In re Hannover Corp.)*, 310 F.3d 796 (5th Cir. 2002) ......13

*Matter of Larson,* 862 F.2d 112, 119 (7th Cir. 1988) ....................................................................16

*Mendiono v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) .......................................3

*Osherow v. Charles (In re Wolf)*, No. 15-31477-HCM, 2016 WL 4940198 (Bankr. W.D. Tex. Sept. 15, 2016) .............................................................................................................................13

*Quilling v. Schonsky*, 247 F. App'x 583 (5th Cir. 2007) ...................................................................9

*Richardson v. Alaska Airlines, Inc.*, 750 F.2d 763 (9th Cir. 1984) ...............................................18

*Rogers v. McDorman*, 521 F.3d 381 (5th Cir. 2008) .....................................................................15

*S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295 (5th Cir. 2007) ........................................................11

*Sherman v. OTA Franchise Corp. (In re Essential Fin. Educ., Inc.)*, 629 B.R. 401 (Bankr. N.D. Tex. 2021) ..................................................................................................................................10

*Soza v. Hill (In re Soza)*, 542 F.3d 1060 (5th Cir. 2008) .................................................................7

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863 (5th Cir. 2000) .................................................4

*Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587 (N.D. Tex. 2004) ................................................4

*Westgate Vacation Villas, Ltd. v. Tabas (In re Intl. Pharmacy & Discount II, Inc.)*, 443 F.3d 767 (11th Cir. 2005) .................................................................................................................17

*Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218 (5th Cir. 2001) ...................................16

**STATE CASES**

*Bowman v. El Paso CGP Co.*, 431 S.W. 3d 781 (Tex. App. 2014) .................................................10

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000) ...................................................14

*Gentry v. Credit Plan Corp.*, 528 S.W.2d 571 (Tex.1975) .............................................................6

*Hahn v. Love*, 321 S.W.3d 517 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) .................13

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560 (Tex. 2016) ........................................................13

*Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372 (Tex. 1984) ................................................................6

*Matthews Const. Co. v. Rosen*, 796 S.W.2d 692 (Tex. 1990) ........................................................6

*State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399 (Tex. 2023) ..........................................6

**FEDERAL STATUTES**

11 U.S.C. § 544(b) ........................................................................................................................17

11 U.S.C. §§ 544(b)(1) ...............................................................................................................2, 3

11 U.S.C. § 548(a)(1)(B) ................................................................................................................2

11 U.S.C. § 550(a) ..........................................................................................................................2

11 U.S.C. § 550(b) ........................................................................................................................14

28 U.S.C. §§ 157 and 1334 ............................................................................................................2

28 U.S.C. § 157(b) ..........................................................................................................................2

28 U.S.C. §§ 1408 and 1409 ..........................................................................................................2

11 U.S.C. § 548(a)(1)(A) ................................................................................................................2

Bankruptcy Code § 544 ........................................................................................................4, 7, 17

Bankruptcy Code § 548 .......................................................................................................... 7, 13

Bankruptcy Code § 548(1)(B)(i) ...................................................................................................10

ii

Bankruptcy Code § 548(a)(1) ...................................................................................................4

Bankruptcy Code § 548(d)(2)(A)............................................................................................10

Bankruptcy Code § 550 .............................................................................................14, 16, 18

Fed. R. Bankr. P. 7012................................................................................................................1

Fed. R. Civ. P. 9, 12...................................................................................................................2

Fed. R. Civ. P. 9(b) ..........................................................................................................7, 8, 9

Fed. R. Civ. P. 12(b)(6)............................................................................................................3

**STATE STATUTES**

Comm. Code § 24.005(a)..........................................................................................................4

Comm. Code § 24.005(a)(1) ...........................................................................................3, 7, 12

Comm. Code § 24.005(a)(2) .................................................................................................3, 10

Comm. Code § 24.005(b)...........................................................................................................7

Texas Uniform Fraudulent Transfer Act....................................................................................7

52340531.8
4879-0685-1797.1

Funderz.net, LLC ("Funderz"), a limited liability company organized under the laws of the state of  New York, files this memorandum in support of its motion to dismiss the *Amended Complaint to Avoid and Recover Fraudulent Transfers* [Docket No. 20] (the "Amended Complaint") filed by Areya Holder Aurzada, Chapter 7 Trustee for the Bankruptcy Estate of Dennis James Rogers II (the "Trustee" or "Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable herein through Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and respectfully states as follows:

## INTRODUCTION

1.      Funderz was duped by debtor Dennis James Rogers II (the "Debtor") into lending him and his affiliated companies $10 million on account of a non-existent business operation selling fuel contracts.  The Debtor and his companies repaid up to $11.5 million (the "Transfers") on account of the loan principal and interest, but Funderz is still owed millions of dollars.  The Debtor similarly duped a number of other persons into giving him and his businesses money.  In fact, no business operations ever began, and the Debtor and his companies continued their fraud until the Debtor found himself on the receiving end of an involuntary bankruptcy petition.

2.      The Trustee filed a Complaint against Funderz seeking to recover the loan proceeds and contractual fees and interest paid to Funderz by mischaracterizing Funderz as an "investor" in a Ponzi scheme.  The Complaint did not allege a Ponzi scheme, or other actual fraud.  The partial repayment of a valid loan according to its terms provided the Debtor with reasonably equivalent value, and cannot be avoided. After Funderz filed a motion to dismiss the Complaint, the Trustee filed the Amended Complaint, which did not correct the deficiencies in the initial Complaint. Instead, the Amended Complaint improperly conflates ordinary lending with Ponzi scheme investment and misreads applicable case law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 544, 548 and 550 of title 11 of the United States Code (the "Bankruptcy Code"), Fed. R. Civ. P. 9, 12 and Fed. R. Bankr. P. 7012.  Funderz confirms its consent to the entry of a final order in this matter.

## RELEVANT BACKGROUND

4.      On March 22, 2022, (the "Petition Date") an involuntary petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code. On March 28, 2022, this Court entered an order for the United States Trustee to appoint an interim Chapter 7 Trustee (Dkt. No. 16). Thereafter, the Trustee was appointed as the interim Chapter 7 Trustee. On April 26, 2022, this Court entered an order for relief against the Debtor under Chapter 7 (Dkt. No. 33). The Trustee continues to serve as the permanent Chapter 7 Trustee.

5.      On April 26, 2024, the Trustee filed the Complaint, commencing the instant adversary proceeding.

6.      Funderz filed a motion to dismiss on June 6, 2024.  (Adv. Dkt. Nos. 5, 6).

7.      The Trustee filed the Amended Complaint on July 22, 2024.  (Adv. Dkt. No. 20).

8.      The Amended Complaint alleges that in 2019, Funderz, loaned $10 million to the Debtor's company OMTC, Inc. ("OMTC") personally guaranteed by the Debtor.  Am. Compl. ¶ 19.  On account of interest, fees and principal, the Debtor and his companies allegedly repaid $11.5 million to Funderz (the "Transfers") within four years of the petition date.  At the time of the Transfers, Funderz was owed in excess of $15 million.

9.      The Amended Complaint makes seven requests for relief in Counts A-G, as

5

follows:

| | | |
|---|---|---|
| A. | Avoidance of Actual Fraudulent Transfers—11 U.S.C. § 548(a)(1)(A); | |
| B. | Avoidance of Constructive Fraudulent Transfers—11 U.S.C. § 548(a)(1)(B); | |
| C. | Avoidance of Actual Fraudulent Transfers—Tex. Bus. & Comm. Code § 24.005(a)(1) through 11 U.S.C. § 544(b)(1); | |
| D. | Avoidance of Constructive Fraudulent Conveyances—Tex. Bus. & Comm. Code § 24.005(a)(2) through 11 U.S.C. § 544(b)(1); | |
| E. | Recovery of Fraudulent Transfers—11 U.S.C. § 550(a); | |
| F. | Unjust Enrichment; | |
| G. | Attorney's Fees. | |

10.    The Amended Complaint does not plead the dates or amounts of specific Transfers, or the party that made each Transfer, whether it was the Debtor or one of his affiliated companies. Instead, it alleges that aggregate amounts were transferred from certain bank accounts during certain date ranges. The Amended Complaint admits that it cannot document the entire $11.5 million allegedly transferred. Am. Compl. ¶ 21.

11.    The Amended Complaint is legally and factually deficient and must be dismissed for the reasons discussed below.

## ARGUMENT

### A.    Motion to Dismiss Standard

12.    Under Federal Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Dismissal is appropriate where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiono v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

6

pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)).

13.    A complaint "must provide 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Nor can a complaint rest on 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678.  While a court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

14.    Dismissal of a complaint with prejudice is proper where a claim is insufficient as a matter of law, since amendment of the complaint would be futile.  Taubenfeld v. Hotels.com, 385 F. Supp. 2d 587, 592 (N.D. Tex. 2004) (citing Schiller v. Physicians Res. Grp., Inc., 342 F.3d 563, 566 (5th Cir.2003)).  Amendment is also futile when a potential "amended complaint would fail to state a claim upon which relief could be granted." Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000).

**B.    The Amended Complaint Does Not Plead a Transfer of the Debtor's Property**

1.    The Amended Complaint Pleads that Non-Debtors Made the Transfers out of Their Accounts

15.    Counts A, B, C, and D seek to avoid the Transfers as actually or constructively fraudulent.   These claims require the Trustee to show the transfer "of an interest of the debtor in property" per Bankruptcy Code Section 548(a)(1) or a "transfer made or obligation incurred by a debtor" per Tex. Bus. & Comm. Code § 24.005(a), applicable pursuant to Bankruptcy Code Section 544.  The Amended Complaint pleads that some or all of the Transfers were not made by the Debtor and were not property of the Debtor.

16.    The Amended Complaint identifies five businesses owned by the Debtor, including

7

Bootstrap Ventures, LLC ("Bootstrap").  Am. Compl. ¶ 10.  The Amended Complaint alleges that these Debtor-affiliated companies "had 28 traditional banking accounts and another 20 brokerage accounts." Am. Compl. ¶ 12.  The Amended Complaint alleges that the Debtor did not make most of the Transfers: "Funderz was paid back from seven different accounts including two different Rogers' personal accounts. The bulk of the Funderz' repayments came from Bootstrap." Am. Compl. ¶ 20.

17.    The Amended Complaint actually identifies only $10,190,524.00 in alleged Transfers; the remainder of the Transfers are not identified or pled in the Amended Complaint. Am. Compl. ¶ 21.

18.    The clumsy and imprecise allegations in the Amended Complaint do not identify how many transactions were made on account of the Transfers, or which entities made the alleged unpled Transfers not identified in paragraph 21, or how much money was transferred and on what date; Counts A through D should be dismissed entirely, and the Trustee must be required to re-plead the kind of specific facts that would allow Funderz to properly address the Trustee's theory.

19.    Regardless, these averments demonstrate that the nondebtor companies, not the Debtor, made a substantial portion of the Transfers.  Dismissal with prejudice is appropriate here, where the Amended Complaint affirmatively pleads facts showing that no transfer of Debtor property took place; no amendment can correct this factual deficiency.  Counts A through D must be dismissed with prejudice as to any Transfer made by any person other than the Debtor.

2.    Under Texas Law an Alter Ego Finding Merely Extends the Parties Liable for the Debtor's Debts, It Does Not Merge the Companies into the Debtor

20.    The Amended Complaint alleges that the Debtor and his companies should be considered alter egos of each other and de facto merged into one person under Texas law. Am. Compl. ¶ 13.

8

21.     One bankruptcy court noted that "the vast majority of Texas and Fifth Circuit cases describe the result of an alter ego finding as an imposition of liability" but some describe alter ego as a de facto merger of the entities.  Frank v. Ward (In re Ward), 557 B.R. 508, 516 n.9 (Bankr. N.D. Tex. 2016).  The Ward court thoughtfully explained the different outcomes of these theories in a bankruptcy context:

> After reviewing the relevant jurisprudence, however, it appears that an alter ego finding can have one of two outcomes under Texas law: (1) the entities are no longer legally separate and all assets of the non-debtor entity are retroactively reclassified as property of the Debtor or the bankruptcy estate (this is the outcome posited by the Plaintiffs), or (2) the assets of the non-debtor entity may become liable for the payment of a specific debt owed by the Debtor (because alter ego is a remedy to assist in the collection of a proven debt against the Debtor), but the Debtor and the non-debtor remain legally distinct entities.

Id., at 515–16.

22.     To say that the imposition-of-liability theory is supported by the "vast majority" of the case law is an understatement: the Supreme Court of Texas and the Fifth Circuit apply the theory.  "Under Texas law the alter ego doctrine allows the imposition of liability on a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business conduit."  Gardemal v. Westin Hotel Co., 186 F.3d 588, 593 (5th Cir. 1999) (citing Hall v. Timmons, 987 S.W.2d 248, 250 (Tex.App.—Beaumont 1999, no writ)); Lucas v. Tex. Indus., Inc., 696 S.W.2d 372, 374 (Tex. 1984) ("Generally, a court will not disregard the corporate fiction and hold a corporation liable for the obligations of its subsidiary…").[1]

---

[1]     To the extent that Matthews Const. Co. v. Rosen, 796 S.W.2d 692 (Tex. 1990) includes language suggesting a de facto merger theory, that court was addressing the application of a statute of limitations where underlying liability by the primary actor had already been found.  That is a substantially different question than in the instant case and merely repeated established precedent: "In Gentry v. Credit Plan Corp., 528 S.W.2d 571 (Tex.1975), we held that suit against a corporation tolls limitations as to the alter ego of the corporation."  Id. at 693.

9

23.    Under binding Texas law, as applied in binding Fifth Circuit precedent, an alter ego theory can serve to impose liability on a non-debtor once the debtor's liability is established.  An alter ego determination does not merge the various non-debtor entities into the debtor.

24.    The Debtor's affiliated companies maintain their entity separateness even if this Court finds they are the Debtor's alter egos.  **Any Transfers made by these non-Debtors are not transfers of the Debtor's property and cannot be avoided**.  Counts A through D must be dismissed with prejudice.

**C.    The Actual Fraud Claims are Inadequately Pled**

1.    <u>The Trustee Pleads No Badges of Fraud</u>

1.    Counts A and C seek avoidance of the Transfers as actual fraudulent transfers under Bankruptcy Code Sections 544, 548 and Tex. Bus. & Comm. Code § 24.005(a)(1).  The Trustee has the burden to prove the requisite fraudulent intent.  <u>Bustamante v. Johnson (In re McConnell)</u>, 934 F.2d 662, 665 n. 1 (5th Cir. 1991).  To state a claim on either Count, the Trustee must allege sufficient "badges of fraud" applicable to the challenged transaction, including,

> (1) the lack or inadequacy of consideration; (2) the family, friendship, or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

---

The tolling of a statute of limitations is entirely consistent with the imposition-of-liability theory, since an extended statute of limitations permits the judgment creditor to pursue the alter ego once primary liability is established.

Subsequent decisions by the Supreme Court of Texas apply the imposition-of-liability theory, not de facto merger.  <u>State v. Volkswagen Aktiengesellschaft</u>, 669 S.W.3d 399, 419 (Tex. 2023) (court cannot "disregard corporate separateness or fuse the intermediaries with the German manufacturers based on alter ego or any other veil-piercing theory" to find jurisdiction).

52340531.8
4879-0685-1797.1

and (6) the general chronology of events and transactions under inquiry.

*See* Soza v. Hill (In re Soza), 542 F.3d 1060, 1067 (5th Cir. 2008) (citation omitted).  The Texas

Uniform Fraudulent Transfer Act ("TUFTA") sets forth a substantially similar list of factors for

determining actual intent.  *See* Tex. Bus. & Comm. Code § 24.005(b).

25.    For a claim of actual fraud, the heightened pleading standard of Fed. R. Civ. P. 9(b)

applies, and the Amended Complaint must contain factual allegations stating the "time, place, and

contents of the false representations, as well as the identity of the person making the

misrepresentation and what that person obtained thereby." In Life Partners Holding, Inc. v.

Cowley, 926 F.3d 103 (5th Cir. 2019) (quoting Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061,

1068 (5th Cir. 1994)).

26.    The Amended Complaint pleads none of these factors, and instead alleges they were

absent.  The Amended Complaint pleads that the Transfers were repayments for principal and

contractual interest and fees on a loan where Funderz loaned $10 million; consideration was ample.

Am. Compl. ¶ 19.  The Amended Complaint alleges that Funderz is a third-party lender with no

close association with the Debtor or his companies.  *See* Am. Compl. ¶ 18.  The Amended

Complaint alleges that Funderz kept the Transfers and did not surreptitiously return them to the

Debtor's control.  Am. Compl. ¶ 53.  The Amended Complaint alleges that the financial condition

and cumulative effect of the Transfers did not alter the Debtor's behavior, but that he perpetuated

an improper scheme both before and after the Transfers were made.  Am. Compl. ¶ 45 ("the

Transfers were premised on maintenance and perpetuation of a fraudulent scheme").

27.    The general chronology of events in the Amended Complaint suggests nothing

aside from a borrower who will not repay: Funderz loaned money pursuant to a promissory note

and guarantee, the Debtor repaid some of the loan and refused to pay more until he was sued.  Am.

11

52340531.8
4879-0685-1797.1

Compl. ¶¶ 19-21.

28.     As discussed below, the Amended Complaint does not even plead that Funderz

loaned money into a Ponzi scheme, and includes no facts to support the allegation that the Debtor

"made payments solely to keep the Ponzi scheme alive."  Am. Compl. ¶ 28.

29.     These allegations are entirely insufficient to meet the normal pleading standard, and

do not even begin to address the "time, place and false representations" with sufficient specificity

to meet the Fed. R. Civ. P. 9(b) pleading standard.  The Amended Complaint does not state a claim

for an actual fraudulent transfer, since it alleges **none** of the badges of fraud.

2.     <u>The Trustee Does Not Adequately Plead a Ponzi Scheme</u>

30.     The Amended Complaint acknowledges that it does not plead actual fraud, but

instead relies on the "Ponzi presumption."  Am. Compl. ¶ 22.  The Trustee alleges that, *if*

*applicable*, the Ponzi presumption establishes fraudulent intent.  **The Amended Complaint does**

**not plead a Ponzi scheme, so the presumption does not arise.**

31.     The Fifth Circuit defines a Ponzi scheme specifically as a "fraudulent investment

scheme in which money contributed by later investors generates artificially high dividends or

returns for the original investors, whose example attracts even larger investments."  <u>Janvey v.</u>

<u>Alguire</u>, 647 F.3d 585, 597 (5th Cir. 2011).  The Ponzi presumption is applicable only to "classic"

Ponzi schemes: "[I]n a classic Ponzi scheme, as new investments [come] in . . . some of the new

money [is] used to pay earlier investors."  <u>Id</u> (quoting <u>U.S. v. Setser</u>, 568 F.3d 482, 486 (5th Cir.

2009)).

32.     The Fifth Circuit held that no Ponzi scheme was established by an affidavit from

the custodian of records alleging that,

> (1) investor funds constituted virtually all of [debtor] Giant's revenue; (2)
> those funds were commingled and used for personal and unauthorized

12

> expenses; (3) Giant did not operate a profitable business outside of money received from new investors; (4) investor funds were used to pay "returns" to some investors; and (5) Giant used some of its funds to procure new investors.

American Cancer Soc'y v. Cook, 675 F.3d 524, 527–28 (5th Cir. 2012).

33.    The Fifth Circuit stated that this testimony "is highly conclusory" and that the affidavit and supporting documents did not identify "any instance in which a single payment was made to an investor." Id. at 528.  For those reasons, the Ponzi presumption could not be applied.

34.    Here, the Amended Complaint alleges much less.  It merely alleges that the Debtor induced people to give him money by promising nonexistent water rights and fuel contracts, and that some of those "investors" were paid with funds from other "investors."  Compl. ¶ 16.

35.    In fact, the Amended Complaint conflates three separate schemes.  As described in the Debtor's plea agreement for securities fraud, attached to the Amended Complaint as Exhibit 1, the Debtor was engaged in a scheme to sell oil and gas rights (the "**Fuel Fraud**").  See Am. Compl. Ex. 1 ¶¶ 3-7.  The proceeds of the Fuel Fraud were not used to repay other investors, but were "diverted by Rogers to other business entities" to "purchase real estate and to pay Rogers' personal expenses." *Id*. at ¶¶ 5, 7.  As pled, the Fuel Fraud was ordinary securities fraud, without a Ponzi scheme component.

36.    The Debtor's plea agreement also describes a separate "third scheme" regarding water rights (the "**Water Fraud**"). *Id*. at ¶ 8.  Only as to the Water Fraud, the Debtor pled that he used investor funds to repay other investors. *Id*. at ¶ 10.

37.    The Amended Complaint pleads that Funderz loaned money towards the Fuel Fraud, not the Water Fraud.  Am. Compl. ¶ 19 ("Funderz agreed to provide funds to OMTC for the purchase of ultra-low sulfur diesel fuel").

38.    The Amended Complaint identifies a number of purposed "investors" but  does not

13

describe the amount they "invested" and whether that investment was part of the Fuel Fraud or the Water Fraud.  Am. Compl. ¶ 16.

39.     Even if the Amended Complaint pleads that the Water Fraud involved a Ponzi scheme, it does not identify any Ponzi characteristics for the Fuel Fraud.  Instead, **the Amended Complaint makes a mere conclusory allegation that the Fuel Fraud was a Ponzi scheme without factual support**, clearly insufficient to meet the Fed. R. Civ. P. 9(b) heightened pleading standard.  The Amended Complaint relies on tricky wording to obscure the fact that it does not allege any "classic" Ponzi investors in the Fuel Fraud.

40.     The Amended Complaint alleges that "Funderz Invests and Recovers."  Id. ¶ C.  But Funderz is not an investor; the Amended Complaint identifies it as a lender, and pleads that Funderz lent money in a transaction documented by a promissory note.  Id. ¶ 18-19.

41.     The Amended Complaint pleads that the alleged "investments" were "typically documented by a promissory note, loan agreement, or purchase order."  Am. Compl. ¶ 15.  However, these types of documentation create a lender or vendor relationship, not one of investment.  In a "classic" Ponzi scheme, the investors receive investment products: securities.  See Quilling v. Schonsky, 247 F. App'x 583, 586 (5th Cir. 2007) (finding a Ponzi scheme where company sold investors illegal unregistered securities).

42.     Notably, as the Fifth Circuit has made clear, "Not all securities frauds are Ponzi schemes."  American Cancer Soc'y v. Cook, 675 F.3d at 528.  But the Amended Complaint pleads something different here: a scheme to extract money from a lender without an underlying business.  No case known to Funderz establishes a Ponzi scheme based on defrauding lenders, and such a scheme certainly does not fit into the rubric of a "classic" Ponzi scheme necessary to obtain the Ponzi presumption.  The Trustee is not entitled to the Ponzi presumption, and has not otherwise

14

established the requisite intent.  Accordingly, Counts A and C must be dismissed.

**D.      The Constructive Fraud Claims Fail Because the Amended Complaint Alleges the Transfers Were Made for Reasonably Equivalent Value**

43.      Counts B and D allege constructively fraudulent transfers.  To state a claim for a constructive fraudulent transfer, the Trustee must show that the Transfers were made for "less than a reasonably equivalent value" or "without receiving a reasonably equivalent value.   See Bankruptcy Code Section 548(1)(B)(i); TUFTA § 24.005(a)(2).

44.      TUFTA § 24.004(a) provides that "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied."   Likewise, Bankruptcy Code Section 548(d)(2)(A) provides that "'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor."

45.      Funderz applied the Transfers to reduce the balance owed to it.  Therefore, Funderz provided value in the form of reduced loan liability on a valid antecedent debt, and the Amended Complaint acknowledges as much. Am. Compl. ¶¶ 19, 20.

46.      The Amended Complaint alleged that "Interest is not payment of an antecedent debt, reasonably equivalent value or any value at all."  Am. Compl. ¶¶ 23, 30, 45.  The Trustee cites Janvey v. Brown, 767 F.3d 430, 439-44 (5th Cir. 2014) for this proposition, but that case is inapt.  In that case, the "interest" was interest on an investment made by the avoidance defendants – persons who were "net winners" in a Ponzi scheme.   In that case the underlying investment contracts were unenforceable under state law, so the investors had no valid claim.  Value includes satisfaction of an antecedent debt, so payment of interest provides reasonably equivalent value when there is:

a 'debt' that the interest payments are reducing. Because TUFTA defines a 'debt' as being a "liability on a claim," the investor-defendants must have a valid claim. Here, we conclude that there is no valid claim for interest; the CDs issued by [the

15

debtor] are void and unenforceable. This is because "[t]o allow an [investor] to enforce his contract to recover promised returns in excess of his undertaking would be to further the debtors' fraudulent scheme as the expense of other [investors]."

Janvey v. Brown, 767 F.3d 430, 441 (5th Cir. 2014) quoting In re Taubman, 160 B.R. 964, 985 (Bankr.S.D.Ohio 1993).

47.     Interest is, by definition, an amount a debtor is liable to repay in addition to principal; it is part of a debt and gives rise to a claim.  Matter of Larson, 862 F.2d 112, 119 (7th Cir. 1988) (the "broad definition of a "claim" as a "right to payment" has been read to include interest.").

48.     The Trustee does not allege that the underlying loan is invalid or unenforceable. Since the Amended Complaint pleads that every dollar Funderz received satisfied either principal or interest, every dollar of the Transfers satisfied an antecedent debt.  The repayment of interest provided value to the Debtor, because the Debtor was a guarantor on the loan.

49.     The only issue potentially in dispute is whether the value given was "reasonably equivalent."  Reasonably equivalent value is not defined in the Bankruptcy Code.  Sherman v. OTA Franchise Corp. (In re Essential Fin. Educ., Inc.), 629 B.R. 401, 442 (Bankr. N.D. Tex. 2021). In the Fifth Circuit, in order to satisfy this element, the debtor must have "received value that is substantially comparable to the worth of the transferred property." Id. (citation omitted).

50.     To determine whether value is reasonably equivalent, "[c]ourts examine all the circumstances surrounding a transaction, looking to whether there is a reasonable and fair proportion between what the debtor surrendered and what the debtor received in return." Bowman v. El Paso CGP Co., 431 S.W. 3d 781, 788 (Tex. App. 2014) (quoting In re Pace, 456 B.R. 253, 270 (Bankr. W.D. Tex. 2011)).  "The primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved." S.E.C. v. Res. Dev.

16

Int'l, LLC, 487 F.3d 295, 301 (5th Cir. 2007) (quoting Warfield v. Byron, 436 F.3d 551, 560 (5th Cir. 2006)).

51.     Funderz is aware of no case where repayment of a valid loan owed by a debtor, according to its terms, provided less than reasonably equivalent value.  The Amended Complaint alleges that the loans had "extraordinary fees," and that the Debtor or his companies had use of the loaned funds from some point in 2019 until the Transfers were made.  Am. Compl. ¶ 19.  The failure to plead any actual facts about these fees, interest, the timing of the Transfers or any other relevant information means that the Trustee cannot meet her burden to show lack of reasonably equivalent value.

52.     Even if this inadequate pleading raised concerns to the Court, the Amended Complaint pleads that the Debtor received a dollar-for-dollar reduction in his liability, thereby providing reasonably equivalent value.

**53.**     The Amended Complaint alleges that Funderz loaned $10 million to the Debtor and his companies.  The Amended Complaint alleges that $10 million of the Transfers were paid towards that loan principal.  Am. Compl. ¶¶ 19-20.  **Repaying a dollar loaned in exchange for a dollar reduction in debt is not just reasonably equivalent, it is exactly equivalent.  The repayment of principal cannot be avoided.**

54.     The Debtor and his company OTMC were liable for the entire debt, principal, interest and fees.  Am. Compl. ¶ 19.  The Amended Complaint does not challenge the fact that Funderz received less via the Transfers than it was validly owed at the time.  Each dollar paid, whether towards principal or interest, reduced the Debtor's liability and exactly preserved his net worth.  Every one of the Transfers provided reasonably equivalent value per se.  Counts B and D must be dismissed with prejudice.

17

**E.**    **Funderz Received the Transfers in Good Faith and For Value**

55.    Pursuant to Section 548(c), a good-faith taker for value has a defense to an actual

or constructive fraud claim:

> a transferee or obligee of such a transfer or obligation that takes for value
> and in good faith has a lien on or may retain any interest transferred or may
> enforce any obligation incurred, as the case may be, to the extent that such
> transferee or obligee gave value to the debtor in exchange for such transfer
> or obligation.

55.    TUFTA § 24.009(a) provides a similar good faith taker defense against actual fraud:

"A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person

who took in good faith and for a reasonably equivalent value or against any subsequent transferee

or obligee."    Funderz bears the burden of proving these affirmative defenses.    Jimmy Swaggart

Ministries v. Hayes (In re Hannover Corp.), 310 F.3d 796, 799 (5th Cir. 2002).

56.    As discussed above, payment of a valid antecedent debt is reasonably equivalent

for the purposes of Bankruptcy Code Section 548.    This is true of TUFTA as well: "For purposes

of the 'reasonably equivalent value' requirement in [TUFTA] section 24.009(a), proof that an

exchange occurred for market-value rates in an arm's-length transaction conclusively establishes

that the value exchanged was 'reasonably equivalent.'"    Janvey v. Golf Channel, Inc., 487 S.W.3d

560, 582 (Tex. 2016).

57.    The only issue remaining regarding this defense is Funderz's good faith in receiving

the Transfers.    The issue of good faith is analyzed by evaluating,

> First, whether the transferee had information that that put the transferee on
> inquiry notice that the transferor-debtor was either insolvent or making the
> transfer with a fraudulent purpose. Second, once the transferee was on
> inquiry notice, the court addressed whether the transferee satisfied the
> requirement of a "diligent investigation" of the transfer.

Osherow v. Charles (In re Wolf), No. 15-31477-HCM, 2016 WL 4940198, at *32 (Bankr. W.D.

Tex. Sept. 15, 2016), subsequently aff'd, 697 F. App'x 317 (5th Cir. 2017) (citing Templeton v.

O'Cheskey (In re Am. Hous. Found.), 785 F.3d 143, 164 (5th Cir. 2015)).   The analysis is

substantially the same under TUFTA: a transferee cannot have actual or inquiry notice of a

transfer's fraudulent nature if it wishes to assert the good faith taker defense.  Hahn v. Love, 321

S.W.3d 517, 527 (Tex. App.-Houston [1st Dist.] 2009, pet. denied)).

58.    The Amended Complaint alleges that Funderz was, at some point, put on inquiry

notice of the Debtor's insolvency and the problematic nature of his alleged business operations.

But the Amended Complaint never bothers to lay out the timeline or amount of any of the

Transfers.

59.    Funderz submits that some of the Transfers were made before it filed suit and before

Funderz discovered any facts that would place it on inquiry notice.  Funderz had no reason to

suspect any issues with these Transfers, which it received without any pressure upon the Debtor

and in the ordinary course of its business.

60.    Funderz submits that, even after it began suit, the Debtor and his companies

concealed their fraudulent activities by making false invoices from other companies to provide

supporting documentation to reassure Funderz.  The Debtor used fraud to obscure his fraud,

keeping Funderz in the dark as an innocent recipient of loan repayments in good faith.

**F.    Recovery of the Alleged Transfers under Section 550 Fails because Funderz was the
Subsequent Transferee of the Transfers**

61.    Count E seeks recovery of the avoided transfers pursuant to Bankruptcy Code

Section 550.  As an initial matter, this count must be dismissed because Counts A-D must be

dismissed, leaving no avoided transfer on which the Trustee may recover.

62.    Even if some portion of Counts A-D remains, Funderz is a subsequent transferee of

the Transfers.  A subsequent transferee is entitled to a defense for amounts it took "for value,

19

including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b).

63.     As discussed above, the Debtor's companies retain their entity separateness even if this Court accepts the alter ego allegations. If Debtor property passed to these entities, then to Funderz, the business is the initial transferee and Funderz is the subsequent transferee.[2]

64.     Funderz, by definition, gave value by reducing the Debtor's debt, as discussed above. Likewise, Funderz took in good faith and without knowledge of the voidability of the Transfers, as discussed above. Count E must be dismissed.

**G.    The Unjust Enrichment Claim Is Unavailing**

1.    <u>The Transfers Were Made on Account of a Contract, so the Trustee Cannot Recover in Quasi-Contract</u>

65.     Count F seeks recovery for alleged unjust enrichment. This Count is barred on a legal and factual basis and must be dismissed with prejudice.

66.     Under Texas law, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory" like unjust enrichment. <u>Fortune Prod. Co. v. Conoco, Inc.</u>, 52 S.W.3d 671, 684 (Tex. 2000).

67.     The Amended Complaint accurately alleges that Funderz and the Debtor were parties to an enforceable contract, that $10 million was loaned on account of that contract, that it charged fees and interest consistent with that contract and that the Transfers were made to pay down liability on account of the principal, fees and interest pursuant to the contract. Am. Compl. ¶ 19.

---

[2]     The Amended Complaint does not plead a count to avoid a transfer between the Debtor and his companies because it— inaccurately—alleges the Debtor and his companies are merged. Without such a count, the Trustee cannot recover from Funderz as a subsequent transferee. Funderz makes the argument above in an abundance of caution, due to the inarticulate and confusing nature of the Amended Complaint as pled.

68.     The Trustee cannot recover under a quasi-contract theory for payments made pursuant to a contract.

2.     <u>The Amended Complaint Alleges That the Debtor Committed Inequitable Conduct That Bars Equitable Recovery</u>

69.     Unjust enrichment is an equitable claim.  Recovery on such a claim is barred by the Debtor's well-pled inequitable conduct.  The equitable defense of unclean hands is based on "the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." <u>Rogers v. McDorman</u>, 521 F.3d 381, 385 (5th Cir. 2008) (internal quotation omitted) (applying Texas law).  A plaintiff "cannot recover where, as a result of his own actions, the plaintiff bears at least *substantially equal responsibility* for the underlying wrongdoing of which he is complaining." <u>Floyd v. CIBC World Markets, Inc.</u>, 426 B.R. 622, 642 (S.D. Tex. 2009) (emphasis in original) (quoting <u>Howard v. Fidelity & Deposit Co. (In re Royale Airlines, Inc.)</u>, 98 F.3d 852, 856 (5th Cir.1996)).  The Trustee is subject to all defenses available against the Debtor, including his inequitable conduct. <u>See Yaquinto v. Segerstrom (In re Segerstrom)</u>, 247 F.3d 218, 224 (5th Cir. 2001).

70.     The Amended Complaint contains extensive recitations of the Debtor's improper conduct, inducing Funderz to loan money based on a nonexistent business, and presumably doing so to others as well.  Am. Compl. ¶¶ 16, 19.  In fact, the Trustee pleads that "The Transfers involved actual fraud and malice on the part of Rogers.  The funds used for the Transfers to the Defendant are directly traceable to the Debtor's other creditors in the Ponzi scheme."  Am. Compl. ¶ 58.

71.     Exhibit 1 to the Amended Complaint, the Debtor's plea agreement, has the Debtor admitting to securities fraud with regard to the Fuel Fraud: he admits he "employed a scheme and artifice to defraud, and obtained money by means of untrue statements of material facts."  Am. Compl. Ex. 1 at ¶ 11.

21

52340531.8
4879-0685-1797.1

72.     These allegations completely bar the unjust enrichment claim: it affirmatively shows the Debtor engaged in misconduct in obtaining the loan and in obtaining the funds which allegedly paid off the loan.  It also clearly establishes that the Debtor is at "least substantially equally responsible for the underlying wrongdoing" — he is entirely responsible for duping Funderz and others into giving him money.

73.     To the extent the Court may have concerns about how the Debtor distributed funds prepetition, Congress has made a policy judgment that the avoidance causes of action are the proper remedy to ensure appropriate distributions to creditors.  The Trustee is attempting to use unjust enrichment as an end-run around the avoidance claims because she cannot plead their necessary elements or overcome the valid defenses to the claims.  This is improper, and the unjust enrichment claim is barred under Texas law.  It must be dismissed with prejudice.

## H.     The Trustee Cannot Recover Attorney's Fees Because There is No TUFTA Proceeding and Recovery is Set by Section 550

74.     Count G seeks attorney's fees.  Pursuant to TUFTA § 24.013, "In any proceeding under this chapter, the court may award costs and reasonable attorney's fees as are equitable and just."  However, there is no proceeding under TUFTA in this case; the Trustee cannot recover attorney's fees.

75.     A TUFTA proceeding can only be commenced by an actual creditor of a debtor, not by any other party.  See TUFTA § 24.008 (providing remedies only to "a creditor" of the debtor).

76.     The Trustee is exercising a different power: the derivative "strong-arm" rights provided by the Bankruptcy Code.  "Under 11 U.S.C. 544(b) , a trustee in bankruptcy may 'step into the shoes' of an unsecured creditor and void a transfer of an interest in the debtor's property that the unsecured creditor would have the power to void under federal or state law."  Westgate

22

<u>Vacation Villas, Ltd. v. Tabas (In re Int'l. Pharmacy & Discount II, Inc.)</u>, 443 F.3d 767, 770 (11th Cir. 2005) (citing <u>Pettigrew v. Graham (In re Graham)</u>, 747 F.2d 1383, 1386-87 (11th Cir. 1984)).

77.    The strong-arm power "enables a trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy—except the trustee will recover the property for the benefit of the estate." <u>In re Equipment Acquisition Res.</u>, Inc., 742 F.3d 743, 746 (7th Cir. 2014). The Trustee's cause of action is under Section 544(b), which allows the Trustee to avoid any transfer that could be avoided pursuant to TUFTA. The Trustee is not suing under TUFTA.

78.    Further, the strong-arm power determines whether a transfer can be <u>avoided</u> but not what can be <u>recovered</u>, which is determined by Section 550. Once this principle is established, TUFTA-based attorney's fees are improper for two additional reasons. First, avoidance under TUFTA and attorney's fees under TUFTA are in different sections of the statute. See TUFTA § 24.009 (describing transfers that may be avoided) and § 24.013 (permitting attorney's fees). The Trustee can only avoid a transfer if it would have been avoidable under TUFTA § 24.009. TUFTA § 24.013 is a policy-based enhancement available to a prevailing TUFTA party. It is not avoidance of a transfer.

79.    Second, "[t]he American rule denies attorney's fees to a litigant in federal court in the absence of contract, applicable statute, or other exceptional circumstances . . . . [A]ny exceptions to the American rule will be narrowly circumscribed." <u>Richardson v. Alaska Airlines, Inc.</u>, 750 F.2d 763, 765 (9th Cir. 1984). Recovery is set by Bankruptcy Code Section 550, which does not incorporate any state-law fee-shifting provisions the way that Section 544 incorporates state-law avoidance powers. The Trustee cannot recover attorney's fees, and Count G must be dismissed with prejudice.

23

## CONCLUSION

WHEREFORE, for the reasons discussed above, Counts A, C, and E are inadequately pled and the Court must enter an order dismissing them.  Counts B, D, F, and G are legally and factually deficient and no re-pleading can correct these deficiencies; the Court must enter an order dismissing these Counts with prejudice.  The Trustee cannot recover pursuant to Counts A through D on any Transfers made by a non-Debtor, so the Amended Complaint must be dismissed with prejudice as to these claims as well.

Dated:  August 5, 2024

**SAUL EWING LLP**

*/s/ Micheal W. Bishop*
Carmen Contreras-Martinez (admitted *pro hac vice*)
701 Brickell Avenue, Suite 1700
Miami, FL 33131
(305) 428-4500
carmen.contreras-martinez@saul.com

-and-

Turner N. Falk (admitted *pro hac vice*)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-8415
turner.falk@saul.com

-and-

**GRAY REED**

Micheal W. Bishop (TX Bar No. 02354860)
Amber M. Carson (TX Bar No. 24075610)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135
mbishop@grayreed.com
acarson@grayreed.com

*Counsel to Funderz.Net, LLC*

52340531.8
4879-0685-1797.1

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on August 5, 2024, I caused a copy of the foregoing document to be served via electronic mail to the counsel listed below and via the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

   David B. Miller
SCHNEIDER MILLER REYNOLDS, P.C.
300 N. Coit Road, Suite 1125
Richardson, Texas 75080
david@schneidlaw.com

   -and-

   T. Micah Dortch
Dortch Lindstrom Livingston Law Group
2613 Dallas Parkway, Suite 220
Plano, TX 75093
micah@dll-law.com

   ***Special Counsel for the Trustee Areya Holder Aurzada***

            */s/ Micheal W. Bishop*
            Micheal W. Bishop