David B. Miller
Texas Bar No. 00788057
david@schneidlaw.com
SCHNEIDER MILLER REYNOLDS, P.C.
300 N. Coit Road, Suite 1125
Richardson, Texas 75080
Telephone:    (972) 479-1112
Facsimile:    (972) 479-1113

T. Micah Dortch
Texas Bar No. 24044981
micah@dll-law.com
Dortch Lindstrom Livingston Law Group
2613 Dallas Parkway, Suite 220
Plano, TX  75093
Telephone:  214-252-8258
Facsimile:  888-653-3299

*Special Counsel for the Trustee Areya Holder Aurzada*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 22-30500-swe7** |
| **DENNIS JAMES ROGERS II,** | § | |
| Debtor. | § | **CHAPTER 7** |

_____

| | | |
|---|---|---|
| **AREYA HOLDER AURZADA,** | § | |
| **CHAPTER 7 TRUSTEE FOR THE** | § | |
| **BANKRUPTCY ESTATE OF** | § | |
| **DENNIS JAMES ROGERS II** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Adversary No. 24-03028** |
| | § | |
| **FUNDERZ.NET, LLC,** | § | |
| Defendant. | § | |


## RESPONSE TO DEFENDANT'S MOTION TO DISMISS


TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

AREYA HOLDER AURZADA, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DENNIS JAMES ROGERS II (the "Trustee" or "Plaintiff") files this her Response in opposition to Defendant Funderz.net, LLC's ("Defendant" or "Funderz") Motion to Dismiss (the "Motion to Dismiss") and respectfully states as follows:

## I.    <u>INTRODUCTION</u>

1.    The Motion to Dismiss is an exercise in hypertechnicality and misdirection.  The undisputed facts, as properly plead in the Amended Complaint and as largely acknowledged by Funderz in this case and their state court collection case[1] against Dennis Rogers ("Debtor" or "Rogers") are:

- Funderz provided $10,000,000.00 to OMTC, an entity wholly-owned and controlled by Rogers.  (Amended Complaint Dkt. 20, Para. 19).

- Funderz received at least $11,500,000.00 from its investment.  Those payments came from Rogers, personally, or from the bank accounts of entities wholly-owned and controlled by Rogers.  (Amended Complaint Dkt. 20, Para. 20, 21 and <u>Exhibit 1</u>, Para. 21).

- Funderz sued Rogers in *Funderz v. Rogers* because it expected no less than $5,000,000.00 in profit.  (Amended Complaint Dkt. 20, Para. 19 and App. 011-012, Para. 27).

- Rogers had no underlying business from which to generate payments to investors.

---

[1] Funderz sued Rogers and related entities in Cause No. DC-20-01897; *Funderz.net LLC v. OMTC, Inc., Dennis James Rogers, II, and Site Development Group, Inc.* in the 191st Judicial District of Dallas County, Texas.  The Trustee will refer to this Dallas County state court case as "*Funderz v. Rogers.*"  *See* <u>App. 001-020</u>, a true and correct copy of Funderz' Third Amended Petition in *Funderz v. Rogers*, without the voluminous exhibits.  <u>Exhibit 1</u> is included as a public record to show background facts consistent with the Amended Complaint and not intended to convert any Motion to Dismiss into a motion for summary judgment.  *See, e.g. Little Gem Life Sciences, LLC v. Orphan Med. Inc.*, 537 F.3d. 914, 916 (8th Cir. 2008).

(Amended Complaint Dkt. 20, Para. 16).

- Rogers has been convicted of securities fraud and has admitted operating a Ponzi scheme. More specifically, Rogers used investor funds to pay other investors, purchase real estate and pay his personal expenses. (Amended Complaint Dkt. 20, Para. 17, and Amended Complaint Dkt. 20, Exhibit 1).

- Rogers has entered his plea, his plea has been accepted, and he awaits sentencing on December 18, 2024.[2]

## II. JURISDICTION AND VENUE

2.     The Trustee does not dispute the jurisdiction and venue allegations contained in the Motion to Dismiss.

## III. RELEVANT BACKGROUND

3.     In 2017 and 2018, Rogers set up at least five (5) different shell corporations – Organ Mountain Energy, LLC; OMTC, Inc.; Nomad Development, LLC; Bootstrap Ventures, LLC, and Push Start Industries, LLC (collectively, the "Shell Entities").

4.     Rogers was the sole owner of the Shell Entities. Investigation to date indicates no employees in any of the Shell Entities. Other than the original operating agreements, there are only a handful of corporate records of any type.

5.     The banking records indicate that there was literally no distinction between or among the deposits and distributions made from Rogers' personal accounts and the accounts of the Shell Entities. Rogers and the Shell Entities used six different banks or brokerage firms. Rogers and the

---

[2] The Trustee has attached true and correct copies of the docket and plea agreement in Case No. 3-24-CR0170-K; *United States of America v. Dennis James Rogers II* in the United States District Court for the Northern District of Texas Dallas Division as Exhibits 2 and 3 respectively. App. 021-023 and App. 024-031 respectively. Again, Exhibits 2 and 3 are included as public records to show background facts consistent with the Amended Complaint and not intended to convert any Motion to Dismiss into a motion for summary judgment. *See, e.g. Gem Life Sciences, LLC v. Orphan Med. Inc.*, 537 F.3d. 914, 916 (8th Cir. 2008).

Shell Entities had 28 traditional banking accounts and another 20 brokerage accounts.   On a weekly if not daily basis, Rogers transferred money between Shell Entity accounts and his personal account.  The Shell Entities paid each other's debts and expenses and paid Rogers' debts and expenses.  Even suggestions of any material underlying business in the bank records have proven to be false.

6.     Without acknowledging that it is necessary under the facts and causes of action contained herein, the Trustee pleads that each Shell Entity functioned as an alter ego of Dennis Rogers.  Specifically, each Shell Entity was organized and operated as a mere tool or business conduit for Rogers, there was such unity between the Shell Entities and Rogers that the separateness of the corporations ceased, and holding only the corporations liable would result in an injustice. *See, e.g.*, *Durham v Accardi*, 582 S.W.3d 179, 185 (Tex. App.-Houston [14th Dist.] 2019, no pet.).

7.     For reasons understood only by those who have run Ponzi schemes, Rogers thought using the Shell Entities to conduct a Ponzi scheme and launder money was a good idea.  Rogers pitched two fraudulent products – (1) buying and selling water rights and (2) flipping fuel that he claimed he could purchase wholesale or at auction.  (The water rights product was likely a function of the fact that Dennis Rogers, *Sr.* had experience and success in selling water rights.  Rogers was happy to have investors think he was his father.)

8.     The investment was typically documented by a promissory note, loan agreement, or purchase order, with one of the Shell Entities and a guaranty by Rogers.  The investments shared the common denominator of a promise for potential quick and significant return.

9.     In fact, however, there was no business that appears to have generated any income.  Rogers has admitted that there were no water rights and no fuel contracts.  Instead, early investors were paid back by later investors and those payments to early investors then spawned additional investors or a second investment from the same investor.  By way of example, Anthony and Joanne Capano, Ellis Guilbeau, Kenneth Guilbeau, John and Rhonda Harris, John Hughes, and Troya Montgomery

received payments on their investments.    Some investors received payments, made additional investments and, thus, remain creditors of Rogers.    At no time did Rogers or the Shell Entities have the ability to pay investors absent perpetuating the fraud getting money from new investors.    That Rogers turned to a hard money lender like Funderz to keep the scheme alive is not surprising.

10.    Rogers has pled guilty to securities fraud and admitted that he used funds from investors to pay other investors, purchase real estate, and pay his personal expenses.

11.    In 2019, Funderz agreed to provide funds to OMTC for the purchase of ultra-low sulfur diesel fuel.    Funderz and OMTC executed a series of promissory notes with collateral assignments, security agreements, and guarantees from Rogers.    The loans had extraordinary fees.    Indeed, Funderz admits that it loaned $10,000,000.00 and recovered at least $11,5000,000.00 and, remarkably believes it has been "duped" by Rogers and should have recovered in excess of $15 million.

12.    From bank records the Trustee has reviewed to date, Funderz received multiple payments from on or about January 27, 2020 through at least August 12, 2020 with the bulk of payments being within two years of the original Complaint.    Funderz or its counsel received payments from:

Chase acct ending in 1503 styled "Dennis J. Rogers Checking"  $4,875,000.00.00

Goldman acct ending in 3052 styled "Dennis Rogers Trade Account'' $1,000,000.00

Frost acct ending in 9321 styled "Dennis J. Rogers Personal Account" $500,000.00

Chase acct ending in 8315 styled "Bootstrap Ventures, LLC Checking" $2,350,000.00

Chase acct ending in 7879 styled "OMTC, Inc. Checking" $1,250,000.00

Chase acct ending in 8909 styled "Organ Mountain Energy, LLC" $15,524.00

Frost acct ending in 2223 styled "OMTC, Inc. Checking" $200,000.00

These payments total less than the $11.5 million Funderz has repeatedly acknowledged receiving. Funderz, of course, has the details of all payments received from Rogers or the Shell Entities.

13.     Circumstances, even before any discovery in this case, show that Funderz was on inquiry notice that it was receiving payments from a fraudulent scheme.  The bulk of the transfers to Funderz was made after Funderz filed suit against Rogers and OMTC in *Funderz v. Rogers*.  At that time, there were multiple other suits pending against Rogers and the Shell Entities in Dallas County and other venues.  Funderz, even before conducting discovery and finding very specific evidence of a fraudulent scheme as set out in their amended petitions in state court, knew that Rogers never purchased the diesel fuel referenced in the loans and, instead, used their cash for other purposes.  At some later point, as set forth in their amended petitions, Funderz specifically knew that Rogers used their funds to pay other investors and stated so in sworn pleadings.  Indeed, Funderz had the bank records showing that activity.[3]

14.     On March 22, 2022, an involuntary petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code.  On March 28, 2022, this Court entered an order for the United States Trustee to appoint an interim Chapter 7 Trustee (Dkt. No. 16).  Thereafter, the Trustee was appointed as the interim Chapter 7 Trustee.  On April 26, 2022, this Court entered an order for relief against the Debtor under Chapter 7 (Dkt. No. 33).  The Trustee continues to serve as the permanent Chapter 7 Trustee.

15.     On April 26, 2024, the Trustee filed the Original Complaint.  On June 6, 2024, Funderz filed its first Motion to Dismiss (Dkt. No. 5, 6).  On July 22, 2024, the Trustee filed the Amended Complaint (Dkt. 20).  In the Amended Complaint, the Trustee brought seven causes of action:

A.  Avoidance of Actual Fraudulent Transfers-11 U.S.C. § 548(a)(1)(A);
B.  Avoidance of Constructive Fraudulent Transfers11 U.S.C. § 548(a)(1)(B);
C.  Avoidance of Actual Fraudulent Transfers-Tex. Bus. & Comm. Code § 24.005(a)(1) through 11 U.S.C. § 544(b)(1);

---

[3] Paragraphs 4-14 of this Response track the Amended Complaint Paragraphs 10-21 with non-substantive edits.

      D.  Avoidance of Constructive Fraudulent Conveyances-Tex. Bus. & Comm. Code §
         24.005(a)(2) through 11 U.S.C. § 544(b)(1);

      E.  Recovery of Fraudulent Transfers-11 U.S.C. § 550(a).

      F.  Unjust Enrichment;

      G.  Attorney's Fees.

16.     On August 5, 2024, Funderz filed the present Motion to Dismiss (Dkt. 23, 24). In summary, Funderz asserts that:

- The Amended Complaint does not plead a transfer of the Debtor's property
- The actual fraud claims are inadequately pled
- The constructive fraud claims fail because the Amended Complaint alleges the transfers were made for reasonably equivalent value
- Funderz received the transfers in good faith and for value
- Recovery of the alleged transfers under Section 550 fails because Funderz was the subsequent transferee of the transfers
- The unjust enrichment claim is unavailing
- The Trustee cannot recover attorney's fees because there is no TUFTA proceeding and recovery is set by Section 550

17.     Funderz largely seeks additional detail, some of which is uniquely in its possession, all of which could be easily provided by amendment. None of the issues raised by Funderz suggests it would be futile to amend. At most, issues raised by Funderz could affect the damage model. The Trustee does not believe any amendment is necessary but, to the extent necessary, the Trustee seeks leave to amend as more fully described below.

## IV.  <u>ARGUMENT AND AUTHORITIES</u>

### A. The Motion to Dismiss Standard

18.     When ruling on a Motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). "A claim cannot be dismissed under rule 12(b)(6) unless the plaintiffs would not be entitled to relief under any set of facts or any possible theory that [they] could prove consistent with the allegations in the complaint." *Ferrer v. Chevron*

*Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (internal quotations omitted). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Id. at 280-81*.

19.     For a TUFTA case, the determination of whether a transfer was fraudulent is left to the purview of a jury so long as the plaintiff pleads actual intent to hinder delay or defraud. *Tow v. Speer*, No. CIV.A. H-11-3700, 2015 WL 1058080, at *10 (S.D. Tex. Mar. 10, 2015), *judgment entered,* No. CIV.A. H-11-3700, 2015 WL 1470173 (S.D. Tex. Mar. 31, 2015).

20.     As demonstrated below, the Amended Complaint easily satisfies all applicable pleadings standards. However, even if the Court were to find that the allegations in the Amended Complaint are deficient, dismissal at this stage would be inappropriate. Generally, a pleading deficiency should first be addressed by amendment. *Redden v. Smith & Nephew, Inc.,* Civil Action No. 3:09-CV-1380-L, 2010 WL 184428, at *5 (N.D. Tex. Jan. 19, 2010) (ordering plaintiff to replead breach of contract claim to comply with Rule 8); see also *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 801 (S.D. Tex. 2010) ("[T]here is a general consensus that plaintiffs should be provided with an opportunity to amend their complaint to meet Rule 9(b)'s requirements before ordering dismissal."); *Vetco Sales, Inc. v. Vinar*, Civil Action No. 3:02-CV-1767, 2003 WL 21488629, at *4 (N.D. Tex. Apr. 23, 2003) (addressing 12(b)(6) motion based on counterclaim's violation of Rule 8 and concluding that "dismissal should be avoided until the defendants have been afforded an opportunity to file an amended complaint").

21.     Funderz here presents no argument to justify a departure from these general rules. Thus, should the Court determine that the Amended Complaint fails to meet any applicable pleading requirements in any respect, the Trustee requests an opportunity to amend to meet any deficiencies identified by the Court.

**B. The Amended Complaint Properly Pleads a Transfer of the Debtor's Property or Interest in Property**

> (1) <u>Funderz virtually ignores the millions of dollars transferred directly from the Debtor's personal accounts.</u>

22.     Funderz brazenly states that "The Amended Complaint pleads that some or all of the Transfers <u>were not</u> made by the Debtor and <u>were not property</u> of the Debtor."  The "or all" portion of that sentence is incorrect.  Indeed, the Trustee identified, to the penny, the $6,375,000.00 that came directly from the Debtor (unless, of course, Funderz wants to argue that it is unclear that money coming from accounts in the name of Dennis Rogers somehow did not actually come from Dennis Rogers).  (Amended Complaint Dkt. 20, Para. 21).[4]

23.     Moreover, the Amended Complaint does not state that transfers were "not property of the Debtor."  Rather, the Amended Complaint, as Funderz acknowledges, asserts repeatedly that the Shell Entities were alter egos of the Debtor and that the Debtor controlled the Shell Entities.  Indeed, the Amended Complaint refers to the "unity" between Rogers and his wholly-controlled entities.  (Amended Complaint Dkt. 20, Para. 13).  Rogers controlled the Transfers.

24.     Frustratingly, as part of its flailing attempt to avoid the finding of a Ponzi scheme, Funderz notes that "The Amended Complaint actually identifies only $10,190,524.00 in alleged Transfers; the remainder of the Transfers are not identified or pled in the Amended Complaint."  (Motion to Dismiss Para. 17).  Of course, Funderz, in multiple pleadings acknowledged that it received $11,500,000.00.  *See* <u>Exhibit 1</u>, App. 010, Para. 21.  The Trustee should not be penalized for lack of detail when Funderz has information that the Trustee may not have.

---

[4] Funderz correctly quotes the Amended Complaint which incorrectly stated that "The bulk of the Funderz' repayments came from Bootstrap."  As set forth in the very next paragraph of the Amended Complaint, the bulk of the transfers came from personal accounts of the Debtor.  In other words, the mistaken reference to Bootstrap is immediately corrected in the following paragraph.

(2) Under applicable Texas law, the Debtor "owned" the Property that was transferred.

25.     Fortunately, Texas law has addressed the inequitable result Funderz hoped to achieve

by arguing that it was paid back by some entity legally separate from the Debtor.  In *In re IFS Fin.*

*Corp.*, 669 F.3d 255 (5th Cir. 2012), the Fifth Circuit rejected the escape route urged by Funderz:

> Appellants' first claim on appeal turns on whether IFS owned the Integra
> and INV bank accounts, such that these accounts are an "interest of the
> debtor in property … that is voidable under [Texas] law by a creditor
> holding an [allowable] **262** unsecured claim."  *See* 11 U.S.C. §
> 544(b)(1).  Applying Texas law, both the bankruptcy and district courts
> held that these accounts were such interests based on what they termed
> IFS's "de facto" ownership.  We agree.
>
> Texas law broadly defines the property of a debtor to be "anything that
> may be subject to [the debtor's] ownership."  TEX. BUS. & COM.
> CODE ANN. § 24.002(2),(10).
>
> Texas law counsels that the legal titleholder to a bank account is not
> always the owner of its contents.  *Silsbee State Bank v. French Mkt.
> Grocery Co.*, 103 Tex. 629, 132 S.W. 465, 466 (1910).  To ascertain
> ownership, Texas law directs courts to look not to the legal relationship
> between parties; rather, courts are to examine the individual facts of each
> case.  *Id*.  Reflecting this understanding, the Texas Supreme Court held
> that a depositor of funds to an account in his name was not the owner of
> the funds where he deposited the funds as "agent" and an unknown third
> party withdrew the funds that same day.  *Id*.  "[T]he probative force of
> the facts" showed that the account's owner was not the one "found in the
> full possession and control of the money deposited."  *Id*.  An unseen hand
> exercised actual control over the account.  *See id*.

In sum, and in a holding that surely makes equitable sense, when fraudulent transfers are made by

the Debtor *or out of an account the Debtor controls*, that transfer is subject to fraudulent transfer

causes of action under the Bankruptcy Code or TUFTA.

(3) Funderz' spin on alter ego is overstated and misplaced.

26.     Almost solely in reliance on *IFS Fin. Corp.*, 669 F.3d 255 (5th Cir. 2012), Funderz

argues that a finding of alter ego among Rogers and his Shell Entities would be insufficient as alter

ego does not de facto merge Rogers and the Shell Entities.  Thus, according to Funderz, a finding of

alter ego means that the payments from the Shell Entities to Funderz are not subject to avoidance. Again, at most, this theory changes the damage model but would not lead to dismissal or amendment of any claim.

27.     Funderz' reliance on *In re Ward*, is, however, overstated and misplaced.  First, the court in *In re Ward* made no determination as to whether alter ego merely extended liability or acted as a de facto merger.  Funderz failed to cite the first sentence of footnote 9.  "Because the § 727(a)(2)(A) allegations fail under either scenario, the Court need not determine which outcome is correct at this point in the proceeding.  Instead, the Court only notes the possible outcomes for purposes of this analysis."  *In re Ward*, 557 B.R. at 521.

28.     Further, while it is true that *In re Ward* states that a "vast majority of Texas and Fifth Circuit cases" find that alter ego is only an imposition of liability, the cases cited therein do not go that far.  By way of example, while the court in *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) cited by Funderz states that "under Texas law the alter ego doctrine allows the imposition of liability on a corporation for the acts of another corporation."  That court does not address, and does not even discuss, whether alter ego creates a de facto merger.[5]

29.     At most, *In re Ward* stands for the proposition that funds transferred from a nondebtor alter ego to the debtor may not be subject to fraudulent transfer as they are either (1) a transfer from the debtor to himself or (2) a transfer of property that was not part of the debtor's estate.  *In re Ward* at 557 B.R. 516.

---

[5] The Trustee has also filed a Motion to Approve Substantive Consolidation of Nondebtor Affiliated Entities with the Debtor's Estate.  (Dkt. 248).  Only Funderz objected.  (Dkt. 256).  Although, if granted, The Trustee believes that the addition of the nondebtor entities to the underlying bankruptcy is not required for any cause of action currently pled. Nevertheless, to the extent that the Court finds that the nondebtor Shell Entities must be part of the adversary for the Trustee to seek avoidance of transfers from the Shell Entities, the Trustee respectfully requests that the determination of the Motion to Dismiss come after the ruling on the Motion to Approve Substantive Consolidation of Nondebtor Affiliated Entities.

30.     If necessary, the Trustee can replead to address any concern regarding whether the transfers were of the Debtor's property.  More specifically, the Trustee could plead additional facts regarding ownership and control of the bank accounts.  The Trustee does not believe such amendment is necessary.

## C.  The Actual Fraud Claims are Properly Pled

(1)  <u>Actual fraud may be presumed under the circumstances of this case</u>.

31.     Texas and the Fifth Circuit recognize that:

> When a Ponzi scheme is involved, however, courts applying TUFTA analogues have bypassed the statutory badges-of-fraud analysis in favor of a conclusive presumption that transfers in furtherance of the scheme were made with actual intent to defraud.  Such transfers are fraudulent per se, the theory goes, based on the enterprise's illegality and incipient insolvency, which is also conclusively presumed.

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 566, 567 (Tex. 2016).

32.     Moreover, the presumption of actual intent is not limited to pure Ponzi schemes but extends to "Ponzi-like schemes as well."  *See, e.g., In re Life Partners Holdings, Inc.*, 926 F.3d 103, 119 (5th Cir. 2019) (In cases involving a Ponzi-like scheme, plaintiff may show fraudulent intent by showing that the enterprise operated as a Ponzi scheme without proving which of the entities involved in the scheme was the transferor.

33.     Finally, the Fifth Circuit has not addressed whether Rule 9(b)'s pleading requirements apply to fraudulent transfer cases of either actual intent or constructive intent.  *See In re Life Partners Holdings, Inc.*, 926 F.3d 118-120 (5th Cir. 2019).

34.     But, actual intent in this case comes not from merely the underlying facts but the plea agreement of Rogers.  *See, e.g., In re Ramirez Rodriguez*, 208 B.R. 424, 433 (Bankr. S.D. Tex. 1997) (criminal conviction may operate as collateral estoppel to re-litigate fraudulent intent).  Admittedly, Rogers' awaits sentencing but the plea agreement has been accepted.  *See* <u>App. 021-023</u>.  It is

difficult to imagine an outcome where Rogers did not have actual intent. The Trustee has properly

pled at least one basis to satisfy actual intent.

(2) <u>The Trustee properly pled badges of fraud</u>.

35.     Funderz asserts that the Trustee pled no badges of fraud. The Trustee applied badges

of fraud found in the statutory TUFTA language. Funderz notes that under the Bankruptcy Code,

badges of fraud include:

> (1)  The lack or inadequacy of consideration; (2) the family, friendship, or
> close associate relationship between the parties; (3) the retention of
> possession, benefit or use of the property in question; (4) the financial
> condition of the party sought to be charged both before and after the
> transaction in question; (5) the existence or cumulative effect of the pattern
> or series of transactions or course of conduct after the incurring of debt,
> onset of financial difficulties, or pendency or threat of suits by creditors;
> and (6) the general chronology of events and transactions under inquiry.

*See Soza v. Hill* (*In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (citation omitted). Funderz

acknowledges, as does the case law, that the factors under *Soza* are substantially similar to the factors

under TUFTA.

36.     Funderz does an incomplete analysis of the badges of fraud contained in the Amended

Complaint. At a minimum, the Amended Complaint establishes (1) the lack or inadequacy of

consideration (Amended Complaint Dkt. 20, Para. 30); (4) the financial condition of the party sought

to be charged both before and after the transaction in question (Amended Complaint Dkt. 20, Para.

16); and (5) the existence or cumulative effect of the pattern or series of transactions or course of

conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by

creditors discussed throughout the Amended Complaint with the pendency of suits by creditors in

Amended Complaint Dkt. 20, Para. 24 and of course, in Funderz' own pleadings in <u>App. 010-012</u>,

Para. 22-24.

37.     If necessary, the Trustee can amend to frame the allegations more consistently with *Soza*. The Trustee does not believe that is necessary. Certainly, the Trustee has adequately pled the badges of fraud in the TUFTA claims. Further, if the Court believes that the Rule 9(b) pleading requirements apply to the actual intent or constructive intent claims in this case, the Trustee could amend to more specifically show the "who, what, when and how." The Trustee believes these elements already exist in the Amended Complaint as it has identified Rogers, the misrepresentations he made, the timeframe in which he made those representations and how they were fraudulent.

(3) The Trustee has adequately pled a Ponzi scheme.

38.     The Trustee is not arguing that Rogers operated a Ponzi-like scheme and does not dispute that the Fifth Circuit limits the Ponzi scheme presumption to "true" Ponzi schemes. Although the Trustee can avoid all of the transfers at issue without the Ponzi presumption, this case is a true Ponzi scheme.

39.     The "sine qua non" of any Ponzi scheme is when returns to investors come from other investors. *American Cancer Soc. v. Cook*, 675 F.3d 524, 528 (5th Cir. 2012). Worded differently, "[I]n a classic Ponzi scheme, as new investments [come] in …, some of the new money [is] used to pay earlier investors." *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011) (citations omitted). The Trustee has identified investors paid back from investor funds. (Amended Complaint Dkt. 20, Para. 16).

40.     The Fifth Circuit hesitates to find a true Ponzi scheme when there is an underlying legitimate business enterprise. *See, e.g.,* the drilling operation in *American Cancer Soc. v. Cook*, 675 F.3d 524, 528 (5th Cir. 2012) or the car dealership in *In re Reagor-Dykes Motors, LP,* 2022 WL 2046144, Case No. 18-50214, Adversary No. 20-05005 (N.D. Tex. June 3, 2022).

41.     Here, there is no evidence of any underlying legitimate business, much less evidence that Funderz could have been repaid by anything other than money from investors. To beat the dead

horse, Rogers has admitted in detail that he had no underlying business.

42.    Funderz strains mightily to complicate the Ponzi scheme by asserting that there were three different schemes and that the investments did not include securities as is often found in Ponzi schemes.  Only Funderz, not Rogers or the United States government that is prosecuting him, is troubled by the fact that Rogers told more than one lie.  The Trustee is not aware of any case where any court denied the finding of a Ponzi scheme because the purveyor of the Ponzi scheme pitched more than one type of product.  With no underlying business, Funderz could only have received repayment from investor funds.  Whether Rogers used investment funds based on one lie to pay personal expenses and used investor funds from a different lie in the same scheme to pay back investors is of no consequence.   It is the enterprise as a whole that matters.  *See In re Life Partners Holdings, Inc.*, 926 F.3d at 119 (5th Cir. 2019).

43.    Moreover, without citing any authority, Funderz makes much ado that it was a "lender" not "investor" and that distinction should somehow insulate it from having received money from investors.  Funderz is contradicted by its own pleadings and by the plea agreement.  In *Funderz v. Rogers*, Funderz complained that it had not received its $15,000,000.00 settlement which was "an amount equal to the principal of the Notes plus the amount represented to the Plaintiff as Plaintiff's expected ***profit*** under the Notes."  (Exhibit 1, Para. 27).  Funderz is and was no ordinary lender and a 50% return on principal would seem to affirm that.  In fact, if promissory notes and loan documents make every investor a lender and prevent every investment from being a security, there are no Ponzi schemes in the world as Funderz sees it.

44.    Rogers pled guilty to securities fraud.  Rogers sold securities.  Promising significant returns guaranteed by promissory notes does not shield Rogers from securities fraud.

45.    Whether the principal payment Funderz received is subject to avoidance is a fact-intensive question that should not be decided at this stage.  The Trustee believes that the facts as pled

satisfy the inquiry notice standard to put the principal at risk. *Janvey v. GMAG, LLC*, 592 S.W.3d

125 (Tex. 2019) holds that the principal is at risk when the transferee who receives money is on

"inquiry notice" may be part of a fraudulent scheme. *Janvey v. GMAG*, 592 S.W.3d at 126. It is

improper for Funderz to assert the reasonable equivalent value defense while ignoring the inquiry

notice.

46.     Upon information and belief, Funderz is identified as "investor J.I." in the factual

résumé discussing the securities fraud scheme. (Amended Complaint Dkt. 20, Exhibit 1, Para. 3-5).

47.     If necessary, the Trustee can replead to add specificity regarding the Ponzi scheme.

The Trustee does not believe such an amendment is necessary.

**D.  The Constructive Fraud Claims are Adequately Pled**

48.     TUFTA factors are inherently fact-driven inquiries and certainly not proper at the

Motion to Dismiss stage. *Quinn v. Dupree,* 303 S.W.2d 769, 774 (Tex.1957) (intent to defraud is a

question for the jury); *In re Fairchild Aircraft Corporation,* 6 F.3d 1119, 1125 n. 5 (5th Cir.1993)

(reasonably equivalent value is inherently fact laden); and *Sunbelt Savings, F.S.B v. Bank One Texas,*

*N.A.,* 816 S.W.2d 106, 111 (Tex. App.-Dallas 1991) (summary judgment on insolvency improper),

*rev'd on other grounds,* 824 S.W.2d 557 (Tex.1992).

49.     The elements of a constructive fraudulent transfer under Texas law are
the same as actual fraudulent transfer except instead of pleading
fraudulent intent, the plaintiff must plead facts demonstrating: (1) a
lack of reasonably equivalent value for the transfer; and (2) the
transferor was "financially vulnerable" or insolvent at the time of the
transaction. *See Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562,
566 & n.21 (Tex. 2016); Tex. Bus. & Com. Code § 24.006(a).

*In re Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019).

50.     Once again, only Rule 8(a) is applicable to pleading a constructive fraud case.

Paragraph 30 and 31 of the Amended Complaint (Dkt. 20) allege both a failure to get reasonably

equivalent value and insolvency/inability to pay debts. This in and of itself is sufficient to defeat a

motion to dismiss.

51.    However, Plaintiff goes on to plead that Rogers never had sufficient capital without perpetrating more fraud, having an ongoing Ponzi scheme, and incurring more and more debt. (Amended Complaint Dkt. 20 at para. 16).  Investments in Ponzi schemes do not add value, they only create debt.

52.    The Amended Complaint also pleads that Funderz failed to provide reasonably equivalent value as to the interest or repayment of principal that it received.  As to the interest, Funderz mangles *Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014) as well as other discussions of what constitutes "net winners."  *Brown* cannot be distinguished, as Funderz attempts to do by merely noting that the underlying investments were void.  Investments in Ponzi schemes provide no value. *Brown* did not hinge on the voidability of the certificates of deposit in the *Stanford* cases.  *Brown* provides for the recovery of interest from "net winners" in fraud schemes as a whole:

> [t]o allow an [investor] to enforce his contract to recover promised returns in excess of his undertaking would be to further the debtors' fraudulent scheme at the expense of other [investors]."  And "any recovery would not come from the debtors' own assets because they had no assets they could legitimately call their own.  Rather, any award of damages would have to be paid out of money rightfully belonging to other victims of the Ponzi scheme.

*Id*. at 441 (citations omitted).

**E.  Funderz Was Not a Subsequent Transferee**

53.    Funderz bases its argument that it was a subsequent transferee on conclusions not found in the Amended Complaint and on the self-serving conclusion that Funderz took the transfers in good faith and without inquiry notice of any fraudulent scheme.  More specifically, Funderz states that "if Debtor property passed to these [shell] entities, then to Funderz, the business is the initial

transferee and Funderz is the subsequent transferee. (Motion to Dismiss Dkt. 24, Para. 63).[6]

54.     First, the Trustee does not assert that the transfers to Funderz were transferred other than the single time they were transferred to Funderz.  Although the banking records indicate transfers among Rogers and his Shell Entities, it is entirely speculative for Funderz to consider itself a subsequent transferee and, of course, where the money came from is not pertinent under the Amended Complaint or under Texas law as long as the funds came from accounts under the control of this Debtor.

55.     Finally, Funderz bald assertion that it accepted the transfers in good faith belies the allegations of the Amended Complaint which must be accepted at this point in time.  Funderz effectively asks the Court to weigh evidence regarding good faith in its favor.  (Motion to Dismiss Dkt. 24, Para. 59, 60).  Funderz provides no actual evidence, nor would it be conclusive at this point. The Trustee, on the other hand, has provided quotes from public records to show that "at some point, as set forth in their amended petitions in [*Funderz v. Rogers*], Funderz specifically knew that Rogers used their funds to pay other investors.  (Amended Complaint Dkt. 20, Para. 24).  Funderz complains that the Trustee has not provided a chronology of what Funderz knew about the fraudulent scheme and when they knew it.  That is the subject of later discovery, not an issue for a motion to dismiss.

**F.  Unjust Enrichment Is a Viable Alternative Claim**

56.     Funderz has correctly noted that unjust enrichment is not available when there is an express written contract.  In a fraudulent scheme, such as this, however, whether specifically a Ponzi scheme or not, underlying contracts may be void and unenforceable for a variety of reasons.  In that

---

[6] Here, Funderz dropped a strange footnote apparently suggesting that the Trustee should have alleged fraudulent transfers between the Debtor and his Shell Entities, and without such a cause of action, the Trustee cannot recover from Funderz as a subsequent transferee.  As discussed above, Funderz is not a subsequent transferee.  As discussed below, the *In re Ward* case relied upon by Funderz stands for the proposition that a trustee may not avoid transfers between the Debtor and his Shell Entities.  Should this Court find that Funderz is a subsequent transferee and that the admonition in *In re Ward* is incorrect, the Trustee could amend to assert claims against Funderz as a subsequent transferee.  The Trustee does not believe it is necessary to jump through any of those hoops.

event, unjust enrichment may be an appropriate remedy.

57.     To the extent necessary, the Trustee could easily replead to expressly state that unjust

enrichment is an alternative remedy in the event that the purported contracts are not valid.

58.     Funderz also asserts what amounts to an *in pari delicto* argument that the Trustee

could not prevail on an unjust enrichment claim.  Even if the Trustee is subject to such a defense, it

is not a basis for dismissal or even requiring an amendment.  *See, e.g., In re TOCFHBI, Inc.*, 413

B.R. 523, 537 (Bankr. N.D. Tex. 2009) ("even if the *in pari delicto* doctrine is available to use against

a bankruptcy trustee, it is not a basis to grant summary judgment … because such defense is intensely

factual and there are genuine issues of disputed fact relevant to this defense.")

**G.  Attorneys' Fees under TUFTA**

59.     The Trustee is really not sure what is meant by Funderz' argument that the Trustee

does not have the power to recovery attorneys' fees on TUFTA cases.  Section 24.013 of the Texas

Business & Commerce Code states that the Court may award costs and reasonable attorneys' fees as

are equitable and just in a fraudulent transfer action. Funderz somehow appears to argue that the

Trustee is not suing under TUFTA statutes.  Obviously, this is not true, see Amended Complaint at

pg. 10.

60.     Further, it is axiomatic that the Trustee can seek its fees.  Courts commonly award

fees to trustees bringing TUFTA claims.  For example, Judge Rosenthal awarded the Chapter 7

trustee over $3,000,000.00 in attorneys' fees under TUFTA. *Tow v. Speer*, No. CV H-11-3700, 2015

WL 12765414, at *10 (S.D. Tex. Aug. 17, 2015) ("Tow is awarded $3,023,449.98 for his reasonable

attorneys' fees.") *See also, In re Edwards*, 537 B.R. 797, 806 (Bankr. S.D. Tex. 2015) (awarding

the trustee reasonable fees in a TUFTA proceeding.  Despite the machinations Funderz puts forth, it

cites no case for the novel proposition that trustees cannot recover attorneys' fees under TUFTA.

## V.    CONCLUSION

61.    The Trustee believes that what is left in this adversary proceeding is to find out what Funderz knew and when it knew it.  Funderz does not want to get to that point.  Funderz' Motion to Dismiss calls for unnecessary clarifications but, nevertheless, clarifications that could be made at this Court's direction.  Much of the Motion to Dismiss is not ripe and improperly asks the Court to make factual determinations.  The Trustee believes that the Motion to Dismiss should be denied in its entirety.  Where needed, the Trustee requests leave to amend as set forth above.

Dated:  September 16, 2024                Respectfully submitted,

By: _/s/ David B. Miller_
    David B. Miller
    Texas Bar No. 00788057
    SCHNEIDER MILLER REYNOLDS, P.C.
    300 N. Coit Road, Suite 1125
    Richardson, Texas 75080
    Telephone:  (972) 479-1112
    Facsimile:  (972) 479-1113

    and

    T. Micah Dortch
    Texas Bar No. 24044981
    micah@dll-law.com
    Dortch Lindstrom Livingston Law Group
    2613 Dallas Parkway, Suite 220
    Plano, TX  75093
    Telephone:  214-252-8258
    Facsimile:  888-653-3299

    ***Special Counsel for the Trustee***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 16, 2024, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas by electronic mail.

By: */s/ David B. Miller*
    David B. Miller

David B. Miller
Texas Bar No. 00788057
david@schneidlaw.com
SCHNEIDER MILLER REYNOLDS, P.C.
300 N. Coit Road, Suite 1125
Richardson, Texas 75080
Telephone:    (972) 479-1112
Facsimile:    (972) 479-1113

T. Micah Dortch
Texas Bar No. 24044981
micah@dll-law.com
Dortch Lindstrom Livingston Law Group
2613 Dallas Parkway, Suite 220
Plano, TX  75093
Telephone:  214-252-8258
Facsimile:  888-653-3299

***Special Counsel for the Trustee Areya Holder Aurzada***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 22-30500-swe7** |
| **DENNIS JAMES ROGERS II,** | § | |
| Debtor. | § | **CHAPTER 7** |

_____

| | | |
|---|---|---|
| **AREYA HOLDER AURZADA,** | § | |
| **CHAPTER 7 TRUSTEE FOR THE** | § | |
| **BANKRUPTCY ESTATE OF** | § | |
| **DENNIS JAMES ROGERS II** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Adversary No. 24-03028** |
| | § | |
| **FUNDERZ.NET, LLC,** | § | |
| **Defendant.** | § | |

## RESPONSE TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

**Table of Contents** ................................................................................................. **i**

**Table of Authorities** ............................................................................................. **ii**

    **I.**    **Introduction** .............................................................................. **2**

    **II.**    **Jurisdiction and Venue** ........................................................... **3**

    **III.**    **Relevant Background** ............................................................... **3**

    **IV.**    **Argument and Authorities** ...................................................... **7**

        **A.**  **The Motion to Dismiss Standard** ........................................ **7**

        **B.**  **The Amended Complaint Properly Pleads a Transfer of the Debtor's Property or Interest in Property** ..................................... **9**

        **C.**  **The Actual Fraud Claims are Properly Pled** ............................ **12**

        **D.**  **The Constructive Fraud Claims are Adequately Pled** ............................ **16**

        **E.**  **Funderz Was Not a Subsequent Transferee** ................................... **17**

        **F.**  **Unjust Enrichment Is a Viable Alternative Claim** .................................. **18**

        **G.**  **Attorneys' Fees under TUFTA** ................................................. **19**

    **V.**    **Conclusion** ............................................................................... **20**

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*American Cancer Soc. v. Cook*, 675 F.3d 524 (5th Cir. 2012) .........................................14

*Durham v Accardi*, 582 S.W.3d 179 (Tex. App.-Houston [14[th] Dist.] 2019, no pet.) .......4

*Edwards*, 537 B.R. 797 (Bankr. S.D. Tex. 2015) ...........................................................19

*Fairchild Aircraft Corporation,* 6 F.3d 1119 n. 5 (5th Cir.1993)....................................16

*Ferrer v. Chevron Corp.*, 484 F.3d 776 (5th Cir. 2007) ....................................................7

*Gardemal v. Westin Hotel Co.*, 186 F.3d 588 (5th Cir. 1999) .........................................11

*IFS Fin. Corp.*, 669 F.3d 255 (5th Cir. 2012).......................................................10, 13

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011)..............................................................14

*Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014)...............................................................17

*Janvey v. GMAG, LLC*, 592 S.W.3d 125 (Tex. 2019) ......................................................16

*Janvey v. Golf Channel, Inc.*, 487 S.W.3d 566 (Tex. 2016) ........................................ ..... 12, 16

*Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007) ..................................7

*Life Partners Holdings, Inc.*, 926 F.3d 103 (5th Cir. 2019) ............................................12, 15, 16

*Little Gem Life Sciences, LLC v. Orphan Med. Inc.*, 537 F.3d. 914 (8th Cir. 2008)........2, 3

*Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787 (S.D. Tex. 2010) .....................8

*Quinn v. Dupree,* 303 S.W.2d 769 (Tex.1957)...............................................................16

*Ramirez Rodriguez*, 208 B.R. 424 (Bankr. S.D. Tex. 1997).........................................12

*Reagor-Dykes Motors, LP,* 2022 WL 2046144, Case No. 18-50214,
     Adversary No. 20-05005 (N.D. Tex. June 3, 2022)...................................................14

*Redden v. Smith & Nephew, Inc.,* Civil Action No. 3:09-CV-1380-L,
     2010 WL 184428, at *5 (N.D. Tex. Jan. 19, 2010) ..................................................8

*Soza v. Hill (In re Soza*, 542 F.3d 1060 (5th Cir. 2008) ................................................ 13-14

## TABLE OF AUTHORITIES - continued

**Cases**                                                                                                **Page**

*Sunbelt Savings, F.S.B v. Bank One Texas, N.A.,* 816 S.W.2d 106
    (Tex. App.-Dallas 1991) ............................................................................16

*TOCFHBI, Inc.*, 413 B.R. 523, 537 (Bankr. N.D. Tex. 2009)........................................19

*Tow v. Speer*, No. CIV.A. H-11-3700, 2015 WL 1058080, at *10
    (S.D. Tex. Mar. 10, 2015)........................................................................8, 19

*Vetco Sales, Inc. v. Vinar*, Civil Action No. 3:02-CV-1767, 2003 WL 21488629,
    at *4 (N.D. Tex. Apr. 23, 2003)...................................................................8

*Ward*, 557 B.R. at 521 .............................................................................11, 18

**Statutes and Rules**

11 U.S.C. § 548(a)(1)(A ............................................................................6

11 U.S.C. § 548(a)(1)(B) ...........................................................................6

11 U.S.C. § 550(a) ...................................................................................7

Tex. Bus. & Comm. Code § 24.005(a)(1) through 11 U.S.C. § 544(b)(1)....................6

Tex. Bus. & Comm. Code § 24.005(a)(2) through 11 U.S.C. § 544(b)(1)....................7

Tex. Bus. & Com. Code § 24.006(a) ............................................................16