David B. Miller
Texas Bar No. 00788057
david@schneidlaw.com
SCHNEIDER MILLER REYNOLDS, P.C.
300 N. Coit Road, Suite 1125
Richardson, Texas 75080
Telephone:    (972) 479-1112
Facsimile:    (972) 479-1113

T. Micah Dortch
Texas Bar No. 24044981
micah@dll-law.com
Dortch Lindstrom Livingston Law Group
2613 Dallas Parkway, Suite 220
Plano, TX  75093
Telephone:  214-252-8258
Facsimile:  888-653-3299

*Special Counsel for the Trustee Areya Holder Aurzada*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-30500-swe7 |
| **DENNIS JAMES ROGERS II,** | § | |
| Debtor. | § | CHAPTER 7 |

| | | |
|---|---|---|
| **AREYA HOLDER AURZADA,** | § | |
| **CHAPTER 7 TRUSTEE FOR THE** | § | |
| **BANKRUPTCY ESTATE OF** | § | |
| **DENNIS JAMES ROGERS II** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Adversary No. 24-03028** |
| | § | |
| **FUNDERZ.NET, LLC,** | § | |
| **Defendant.** | § | |

## APPENDIX TO RESPONSE TO DEFENDANT'S MOTION TO DISMISS

| DESCRIPTION | APP. |
|---|---|
| Exhibit 1 – Plaintiff's Third Amended Petition | 001-020 |
| Exhibit 2 – Criminal Docket for Case 3:24-cr-00170-K-1 | 021-023 |
| Exhibit 3 – Plea Agreement for Case 3:24-cr-00170-K-1 | 024-031 |

Respectfully submitted,

*/s/ David B. Miller*
David B. Miller
Texas Bar No. 00788057
SCHNEIDER MILLER REYNOLDS, P.C.
300 N. Coit Road, Suite 1125
Richardson, Texas  75080
(972) 479-1112 Telephone
(972) 479-1113 Telecopy
Email:  david@schneidlaw.com

and

T. Micah Dortch
Texas Bar No. 24044981
micah@dll-law.com
Dortch Lindstrom Livingston Law Group
2613 Dallas Parkway, Suite 220
Plano, TX  75093
Telephone:  214-252-8258
Facsimile:  888-653-3299

**Special Counsel for the Trustee**

FILED
3/4/2021 11:20 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
CAROLYN SELLERS DEPUTY

Cause No. DC-20-01897

| | | |
|---|---|---|
| FUNDERZ.NET LLC | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | 191st JUDICIAL DISTRICT |
| | § | |
| OMTC, INC., DENNIS JAMES ROGERS, II, | § | |
| AND SITE DEVELOPMENT GROUP, INC. | § | |
| | § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S THIRD AMENDED PETITION

Plaintiff, Funderz.net LLC ("Funderz" or "Plaintiff"), files this Third Amended Petition and would show the Court the following:

### I. SUMMARY OF THE FACTS

1.      Funderz entered into a series of three promissory notes with OMTC, Inc. to finance OMTC Inc.'s purchase of ultra-low sulfur diesel fuel from Calumet Specialty Product Partners, LP. Dennis James Rogers II, OMTC Inc.'s president, personal guarantied payment of the promissory notes. However, despite expressly promising to use the funds from contemplated by the promissory notes to purchase the fuel from Calumet Specialty Product Partners LP, OMTC, Inc. and Rogers instead used the funds to pay Site Development Group, Inc. as well as for other purposes not allowed for under the notes. OMTC, Inc. and Rogers breached the promissory notes both by non-payment and by failing to utilize the funds for the represented purposes, instead fraudulently inducing Funderz into providing the funds. Rather than litigate, OMTC, Inc. and Rogers stated they desired to settle the claims. The parties reached a settlement only for Defendants OMTC, Inc. and Dennis J. Rogers II (collectively, the "OMTC Defendants") to claim a technical breach, repudiate the settlement, and attempt to renegotiate because of the COVID-19 pandemic. However, in the

App. 001

course of litigation, it was discovered that OMTC, Inc. and Rogers made promises in the Settlement Agreement they were incapable of performing. OMTC, Inc. and Rogers sought a significant discount on the settlement already agreed upon, failed to perform under that settlement agreement, and sought to push repayment back significantly from the point agreed upon. OMTC, Inc. and Rogers drug the settlement process on for weeks, buying themselves further time to hide funds, abscond with Funderz's expected profits, and further benefit from their multi-million-dollar fraudulent scheme.

## II. PARTIES

2.      Defendant, OMTC, Inc. ("OMTC"), is a Texas corporation that may be served with process by serving its registered agent, Craig D. Rogers, at 8484 W. Monroe, Houston, Texas 77061 or wherever he may be found.

3.      Defendant, Dennis James Rogers II (SSN: Unknown, DL # XXXXXXX814) ("Rogers") is a resident of Texas and may be served with process at 6520 Del Norte Lane, Dallas, TX 75225 or wherever he may be found.

4.      Defendant, Site Development Group, Inc. ("SDG"), is a Wyoming Corporation with its principal place of business in California. SDG was previously served with process, failed to answer, and the Court entered an Interlocutory Default Judgment against SDG.

## III. DISCOVERY, JURISDICTION, AND VENUE

5.      Pursuant Tex. R. Civ. P. 190, Funderz hereby elects that all discovery shall be conducted under Level II of said rule.  Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Funderz seeks monetary relief of more than $1,000,000.00. The Court has jurisdiction because the amount in controversy is within the jurisdictional limits of the Court. Further, venue is proper in Dallas County because one or more of the Defendants is a resident of Dallas County, Texas

pursuant to Texas Civil Practice & Remedies Code § 15.002.

IV. FACTS

**Promissory Note 1**

6.      On or about August 29, 2019, OMTC, as Maker, and Funderz, as Lender, entered into a Promissory Note ("Note 1") by which Funderz agreed to provide funds (the "Note 1 Funds") to OMTC for the purchase of the Product, therein defined as ultra-low sulfur diesel, pursuant to a Master Service Agreement and repayable on the earlier of (i) three (3) Business Days following the consummation of the Sale and (ii) the Outside Date as defined by the terms of Note 1. A true and correct copy of Note 1 is attached hereto and incorporated by reference herein as Exhibit "A."

7.      As an inducement for Funderz to lend the Note 1 Funds, OMTC executed a Security Agreement ("Security Agreement 1") by which OMTC granted Funderz a first priority security interest in the property set forth in §2 of Security Agreement 1 (the "Security Agreement 1 Collateral"). A true and correct copy of Security Agreement 1 is attached hereto and incorporated by reference herein as Exhibit "B."

8.      As further security to Funderz for entering into Note 1, OMTC executed the Collateral Assignment ("Collateral Assignment 1") by which OMTC assigned to Funderz all of its right, title, and interest in a certain Master Supply Agreement dated January 10, 2019, by and between OMTC and Calumet Specialty Product Partners, LP as well as the collateral outlined in Section 2 of the Collateral Assignment ("Collateral 1"). A true and correct copy of Collateral Assignment 1 is attached hereto and incorporated by reference herein as Exhibit "C."

9.      On August 29, 2019, to further induce Funderz to enter into Note 1, Rogers executed the Guaranty ("Guaranty 1") by which Rogers unconditionally guaranteed the full and prompt payment of all of OMTC's obligations to Funderz on a continuing basis. A true and correct copy of

Guaranty 1 is attached hereto and incorporated by reference as Exhibit "D." Additionally, as further inducement for Funderz's agreement to enter into Note 1, Rogers executed the Pledge Agreement ("Pledge Agreement 1"), by which he granted Funderz a security interest in and to all of the shares of stock in OMTC as security for Funderz's agreement to provide the Note 1 Funds. A true and correct copy of Pledge Agreement 1 is attached hereto and incorporated by reference herein as Exhibit "E."

**Promissory Note 2**

10.     On or about September 10, 2019, OMTC, as Maker, and Funderz, as Lender, entered into a second Promissory Note ("Note 2") by which Funderz agreed to lend additional funds (the "Note 2 Funds") to OMTC for the purchase of the Product, therein defined as ultra-low sulfur diesel pursuant to a Master Service Agreement and repayable on the earlier of (i) three (3) Business Days following the consummation of the Sale and (ii) the Outside Date as defined by the terms of Note 2. A true and correct copy of Note 2, is attached hereto and incorporated by reference herein as Exhibit "F."

11.     As an inducement for Funderz to lend the Note 2 Funds, OMTC executed a Security Agreement ("Security Agreement 2") by which OMTC granted Funderz a first priority security interest in the property set forth in §2 of Security Agreement 2 (the "Security Agreement 2 Collateral"). A true and correct copy of Security Agreement 2 is attached hereto and incorporated by reference herein as Exhibit "G." As further security to Funderz for entering into Note 2, OMTC executed the Collateral Assignment ("Collateral Assignment 2") by which OMTC assigned to Funderz all of its right, title, and interest in a certain Master Supply Agreement dated January 10, 2019, by and between OMTC and Calumet Specialty Product Partners, LP as well as the collateral outlined in Section 2 of the Collateral Assignment ("Collateral 2"). A true and correct copy of

Collateral Assignment 2 is attached hereto and incorporated by reference herein as Exhibit "H."

12.      On September 10, 2019, to further induce Funderz to enter into Note 2, Rogers executed the second Guaranty ("Guaranty 2") by which Rogers unconditionally guaranteed the full and prompt payment of all of OMTC's obligations to Funderz on a continuing basis. A true and correct copy of Guaranty 2 is attached hereto and incorporated by reference as Exhibit "I." Additionally, as further inducement for Funderz's agreement to enter into Note 2, Rogers executed the Pledge Agreement ("Pledge Agreement 2") by which he granted Funderz a security interest in and to all of the shares of stock in OMTC as security for Funderz's agreement to provide the Note 2 Funds. A true and correct copy of Pledge Agreement 2 is attached hereto and incorporated by reference herein as Exhibit "J."

**Promissory Note 3**

13.      On or about November 6, 2019, OMTC, as Maker, and Funderz, as Lender, entered into a third Promissory Note ("Note 3") by which Funderz agreed to lend further additional funds (the "Note 3 Funds") to OMTC for the purchase of the Product, therein defined as ultra-low sulfur diesel pursuant to a Master Service Agreement and repayable on the earlier of (i) three (3) Business Days following the consummation of the Sale and (ii) the Outside Date as defined by the terms of Note 3. A true and correct copy of Note 3 is attached hereto and incorporated by reference herein as Exhibit "K."

14.      As an inducement for Funderz to lend the Note 3 Funds, OMTC executed a Security Agreement ("Security Agreement 3") by which OMTC granted Funderz a first priority security interest in the property set forth in §2 of Security Agreement 3 (the "Security Agreement 3 Collateral"). A true and correct copy of Security Agreement 3 is attached hereto and incorporated by reference herein as Exhibit "L." As further security to Funderz for entering into Note 3, OMTC

**THIRD AMENDED PETITION**                                                              **PAGE 5**

executed the Collateral Assignment ("Collateral Assignment 3") by which OMTC assigned to Funderz all of its right, title, and interest in a certain Master Supply Agreement dated January 10, 2019, by and between OMTC and Calumet Specialty Product Partners, LP as well as the collateral outlined in Section 2 of the Collateral Assignment ("Collateral 3"). A true and correct copy of Collateral Assignment 3 is attached hereto and incorporated by reference herein as Exhibit "M."

15.    On September 10, 2019, to further induce Funderz to enter into Note 3, Rogers executed the Guaranty ("Guaranty 3") by which Rogers unconditionally guaranteed the full and prompt payment of all of OMTC's obligations to Funderz on a continuing basis. A true and correct copy of Guaranty 3 is attached hereto and incorporated by reference as Exhibit "N." Additionally, as further inducement for Funderz agreement to enter into Note 3, Rogers executed the Pledge Agreement ("Pledge Agreement 3") by which he granted Funderz a security interest in and to all of the shares of stock in OMTC as security for Funderz's agreement to provide the Note 3 Funds. A true and correct copy of Pledge Agreement 3 is attached hereto and incorporated by reference herein as Exhibit "O."

16.    Note 1, 2, and 3 are collectively referred to as the "Notes." Security Agreement 1, 2, and 3 are collectively referred to as the "Security Agreements." Collateral Assignment Agreement 1, 2, and 3 are collectively referred to as the "Collateral Assignments." Guaranty 1, 2, and 3 are collectively referred to as the "Guaranty Agreements." Pledge Agreement, 1, 2, and 3 are collectively referred to as the "Pledge Agreements." Confession 1 and 2 are collectively referred to as the "Confessions of Judgment." The Note 1, 2, and 3 Funds are collectively referred to as the "Funds." Finally, the Notes, Security Agreements, Collateral Assignments, Guaranty Agreements, and Pledge Agreements are collectively referred to as the "Agreements." Collateral 1, 2, and 3 are collectively referred to as the "Collateral."

**Additional Facts Supporting Plaintiff's Application for Injunctive Relief**

17.     OMTC defaulted under the terms of the Notes by failing to timely pay the amounts due thereunder in compliance with the terms of the Notes. Further, in direct contradiction to the terms of the Notes, the OMTC Defendants fraudulently used the Funds for purposes other than the purchase of ultra-low sulfur diesel for sale in the ordinary course of OMTC's business, including for Rogers's personal use. Funderz discovered that OMTC and Rogers were using the Funds for non-approved purposes and made demand for immediate repayment. At present, Funderz has only recovered a portion of the Funds. Funderz discovered that the Funds were being transferred out of a Goldman Sachs accounts controlled by the OMTC Defendants and into various accounts which are outside of the reach of Funderz.

18.     When questioned by the Plaintiff concerning the whereabouts of the Funds, Defendant Rogers initially concocted a story that his wife had cancer and he was unavailable to discuss the location of the Funds as he was caring for her. When further questioned, Rogers provided a fabricated e-mail which purportedly showed that he purchased a large quantity of the Product from Titan Marine Fuel, LLC valued at approximately $5,000,000.00, which Funderz subsequently discovered was fraudulent.[1] Later, OMTC Defendants produced bank statements that the funds were transferred to an entity known as "SDG" (believed to be Site Development Group) and to purchase real property at an unknown location. Despite demand, the OMTC Defendants have wholly failed to, and in fact have been unwilling to, provide an accounting for and definitive information regarding the location of the Funds, who is currently in possession of them, and why they were not used to purchase the Product from Calumet Specialty Product Partners, LP as agreed.

---

[1] *See* Exhibit P, a true and correct copy of the Titan E-mail.

19.    Further, an analysis of the limited banking information[2] acquired by Funderz demonstrates the fraudulent movement of the Funds by the OMTC Defendants to various checking accounts as well as to pay other entities and creditors:

**OMTC Chase Bank Account #1628 –**

| Date | Transfer In | Source | Transfer Out | Destination |
|---|---|---|---|---|
| 08/29/19 | $5,999,801.00 | Funderz | | |
| 08/29/19 | | | $6,000,000.00 | Checking Account 7879 |
| 08/30/19 | $3,000,000.00 | Checking #7879 | | |
| 08/30/19 | | | $2,700,000.00 | Site Development Group |
| 09/10/19 | | | $250,000.00 | Checking 7879 |
| 09/12/19 | $2,000,000.00 | Funderz | | |
| 09/12/19 | | | $500,000.00 | Site Development Group |
| 09/12/19 | | | $500,000.00 | Checking 7879 |
| 09/16/2019 | | | $777,000.00 | Checking 6837 |
| 09/16/2019 | | | $200,000.00 | Checking 7879 |
| 09/25/2019 | | | $50,000.00 | Site Development Group |
| 09/30/2019 | | | $75,000.00 | Site Development Group |
| 10/30/2019 | | | $125,000.00 | Site Development Group |
| 11/06/2019 | $1,999,801.00 | Funderz | | |
| 11/06/2019 | | | $1,370,000.00 | Site Development Group |
| 11/06/2019 | | | $500,000.00 | Checking 7879 |
| 11/26/2019 | 1,125,000.00 | Checking 7879 | | |
| 11/26/2019 | | | $1,125,000.00 | BMF Capital LLC |
| | | | Balance as of 01/21/2020 | $842.83 |

**OMTC Chase Bank Account #7879 –**

| Date | Transfer In | Source | Transfer Out | Destination |
|---|---|---|---|---|
| 08/29/2019 | $6,000,000.00 | Checking 1628 | | |
| 08/30/2019 | | | $1,000,000.00 | Checking 1503 |
| 08/30/2019 | | | $3,000,000.00 | Checking 1628 |
| 09/03/2019 | $2,000,000.00 | Checking 1503 | | |
| 09/03/2019 | | | $2,000,000.00 | Checking 1503 |
| 09/03/2019 | | | $300,000.00 | Checking 1503 |

---

[2] *See* Exhibit Q and R, a true and correct copy of the relevant banking information.

| Date | Amount | Description | Amount | Account |
|---|---|---|---|---|
| 09/03/2019 | | | $1,500,000.00 | Checking 1503 |
| 09/10/2019 | | | $450,000.00 | Checking 1503 |
| 09/10/2019 | $250,000.00 | Checking 1628 | | |
| 09/12/2019 | $500,000.00 | Checking 1628 | | |
| 09/16/2019 | $200,000.00 | Checking 1628 | | |
| 09/16/2019 | | | $150,000.00 | Checking 1503 |
| 09/16/2019 | | | $500,000.00 | Checking 1503 |
| 09/18/2019 | $1,400,000.00 | Site Development Group | | |
| 09/18/2019 | | | $1,400,000.00 | Checking 1503 |
| 09/23/2019 | $750,000.00 | Checking 6837 | | |
| 09/23/2019 | | | $750,000.00 | Checking 1503 |
| 10/30/2019 | $125,000.00 | Checking 1503 | | |
| 10/30/2019 | | | $125,000.00 | Checking 1628 |
| 11/06/2019 | $500,000.00 | Checking 1628 | | |
| 11/06/2019 | | | $500,000.00 | Checking 1503 |
| 11/26/2019 | $910,000.00 | Checking 1503 | | |
| 11/26/2019 | $200,000.00 | Checking 1503 | | |
| 11/26/2019 | | | $1,125,000.00 | Checking 1503 |
| 01/27/2020 | $700,000.00 | Checking 1503 | | |
| 01/27/2020 | $200,000.00 | Checking 8315 | | |
| 01/27/2020 | | | $700,000.00 | Funderz Partial Repayment |
| 01/2/2020 | | | $200,000.00 | Funderz Partial Repayment |
| Balance as of 01/27/2020 | | | $3,964.82 | |

## Facts Supporting Liability Against Site Development Group, Inc.

20.    The OMTC Defendants transferred approximately $4.8 million to SDG in direct contradiction to the terms of the Notes. All conditions precedent to Funderz's right to recover judgment have been performed or were waived and all notices have been given or were waived.

**Money Paid Back to Date**

21.    To date, Funderz.net, LLC has received $11.5 million towards repayment of the OMTC Defendants' fraudulent conduct.

**Dennis Rogers's Litigation History**

22.    Rogers has a demonstrated history of similar conduct. In Cause No. DC-19-01434, which was pending before the 162nd District Court in Dallas County, Texas, Rogers was sued by Luxemborg Trading, LLC after Luxemborg Trading LLC paid Rogers (through another entity, Organ Mountain Energy LLC) $1,000,000.00 to purchase ultra-low sulfur diesel fuel (the "Luxemborg Trading Lawsuit").[3] However, Rogers failed to purchase the fuel as promised, resulting in a settlement agreement between Rogers and Luxemborg Trading LLC, which Rogers proceeded to breach.[4]

23.    Further, Rogers was sued by Anthony J. Capano and Joanne Capano for breach of promissory notes and guaranties in Cause No. DC-19-12251 pending before the 192nd District Court of Dallas County, Texas (the "Capano Lawsuit").[5]  The Capano Lawsuit is still pending, with the Plaintiffs recently filing a Motion to Overrule Objections, seeking to overrule the objections lodged by Rogers in response to discovery requests.[6] The Motion to Overrule Objections alleges that Rogers has failed to answer any discovery requests or produce any documents.[7] The parties have each filed amendments and it is set for hearing.

24.    Finally, both Rogers and OMTC, Inc. were sued in this Court in Cause No. DC-20-

---

[3] A true and correct copy of the Original Petition in the Luxemborg Trading Lawsuit is attached hereto and incorporated by reference herein as Exhibit "S."
[4] *Ex. S*
[5] A true and correct copy of the Capano Lawsuit is attached hereto and incorporated by reference herein as Exhibit "T."
[6] A true and corret copy of the Motion to Overrule Objections filed in the Capano Lawsuit is attached hereto and incorporated by reference herein as Exhibit "U."
[7] *Id.*

10214 styled *Steven Webster, Aaron Webster, and Dennis Woods v. Dennis J. Rogers, II and OMTC, Inc.* The *Webster* case alleges that, much like the present case, OMTC and Rogers committed fraud to acquire funds for an alleged "purchase." [8]

### OMTC Defendants' Failure to Account for the Funds

25.    Plaintiff has, on numerous occasions, including prior to this lawsuit being filed, requested information from the OMTC Defendants regarding the current location of the Funds. The OMTC Defendants have only provided limited information, continually refusing to provide a definitive accounting for the use and movement of the Funds advanced by Plaintiff. Therefore, in conjunction with the filing of this Amended Petition, Plaintiff is also filing an Emergency Motion for Expedited Discovery.

### Facts Related to the Settlement of the Parties and the OMTC Defendants' Fraud and Subsequent Repudiation of the Same

26.    Plaintiff reached a settlement with the OMTC Defendants (the "Settlement") after over a month of negotiations, including extensive mediation, thereby postponing Plaintiff's filing of the current Amended Petition. [9] The Settlement was formalized through a Settlement Agreement executed by the OMTC Defendants on or about March 4, 2020 (the "Settlement Agreement"). The Settlement called for the OMTC Defendants to make certain payments to the Plaintiff by way of a set payment schedule while also producing certain documents to allow the Plaintiff to monitor OMTC Defendants' financial situation and trace the location of Plaintiff's funds. In exchange, Plaintiff agreed to release certain UCC-1 Financing Statements it filed in New York and Texas.

27.    The Settlement was an effort by the Plaintiff to settle its claims against the OMTC Defendants, which included not only breach of contract and fraud allegations, but also Texas Theft

---

[8] A true and correct copy of the *Webster* First Amended Petition is attached as Exhibit V.
[9] A true and correct copy of the Settlement Agreement is referenced as Exhibit W, though the same is being produced only *in camera* due to confidentiality.

Liability Act, Conversion, Fraud in the Inducement, Money Had and Received, and exemplary damage claims. Plaintiff materially changed positions, agreeing to forgo seeking recovery on these causes of action in exchange for a $15 million settlement, an amount equal to the principal of the Notes plus the amount represented to the Plaintiff as Plaintiff's expected profit under the Notes.

28. One of the primary points of negotiation during both mediation and negotiation of the Settlement Agreement was the OMTC Defendants' promise to turn over certain documents, including information related to Rogers' alleged ownership interest in an entity which was, prior to the Settlement Agreement's execution, simply referred to as the "Residential Lot Entity." Counsel for the OMTC Defendants refused to release the name of the Residential Lot Entity prior to execution of the Settlement Agreement. Ultimately, subsequent to the parties' execution of the Settlement Agreement, the name of the Residential Lot Entity was provided as "The Rogers Group, Inc." However, in the course of litigation, Plaintiff discovered during a deposition of Dennis Rogers Sr., Defendant Rogers' father, that Defendant Rogers has no interest in the Rogers Group, Inc. nor does he have the authority, or ability, to provide financial information and documents regarding the Rogers Group, Inc.'s assets.[10] Therefore, as the exchange of documents was a central component of the Settlement Agreement for which Rogers was unable to perform *ab initio*, the Settlement Agreement is void/voidable. In short, the OMTC Defendants continued their chain of fraud, attempting to cover their wrongdoing by making promises they had no intention, or ability, to perform.

29. Rather than attempting to perform by turning over what documents were available and making the payments required under the Settlement Agreement, the OMTC Defendants decided to attempt to claim a technical breach of the Settlement by the Plaintiff.

---

[10] *See* Exhibit X, an excerpt from the Deposition of Dennis Rogers Sr.

30.    Plaintiff's principals are located in the New York/New Jersey area (while also having some operations in Florida) which was, at the time, the epicenter for the United States' COVID-19 cases. Plaintiff provided the signed Settlement Agreement, dated March 9, 2020, to its counsel on March 16, 2020, by way of e-mail. Prior to March 16, 2020, counsel for the Plaintiff was not in possession of a fully-executed copy of the Settlement. The fully-executed copy of the Settlement was forwarded to the OMTC Defendants' counsel via e-mail on March 18, 2020. Further, on March 23, 2020, within five (5) business days of counsel's knowledge of the fully executed agreement, Plaintiff's counsel e-mailed the OMTC Defendants' counsel copies of the draft UCC-3 Termination Statements contemplated in the Settlement, requesting input. After receiving no return message from the OMTC Defendants' counsel, and in an attempt to perform under the Settlement Agreement, Plaintiff's counsel filed the UCC-3 Termination Statements in both Texas and New York, thereby terminating Plaintiff's perfect liens against the OMTC Defendants. Only after the UCC-1s were terminated, and the OMTC Defendants' next date of performance was mere days away, did the OMTC Defendants' counsel claim that there was a material breach of the Settlement (without inquiring as to any of the facts surrounding the same) and inform Plaintiff's counsel that the OMTC Defendants would not honor the settlement as agreed, threatening counsel with sanctions should counsel file the Agreed Judgment.

31.    Therefore, not only did the OMTC Defendants default under the Settlement, attempting to escape such a default by claiming a "technical breach" despite no harm befalling them, but the OMTC Defendants made representations of fact that were false and, in fact, were impossible for them to perform, resulting in a void/voidable Settlement Agreement.

## V. CAUSES OF ACTION

### Count I – Enforcement of the Settlement Agreement and Entry of the Agreed Judgment – The OMTC Defendants

32.     Plaintiff requests the Court order the parties to specifically perform in compliance with the terms of the Settlement Agreement. Plaintiff performed its responsibilities under the Settlement Agreement within five (5) business days after its counsel received a fully executed Settlement Agreement. Further, and even if performance was somehow late, Plaintiff performed under the Settlement Agreement by filing the UCC-3 Termination Statements. Only after accepting Plaintiff's performance did OMTC Defendants claim existence of a material breach and inform Plaintiff it would not perform as required by the terms of the Settlement Agreement. Plaintiff requests that the Court order the OMTC Defendants to perform under the terms of the Settlement Agreement by providing the required documentation and making the payments as set forth therein. Absent performance, Plaintiff requests the Court enter the Agreed Judgment.

**Count II - Breach of Settlement Agreement – OMTC, Inc. and Dennis James Rogers II**

33.     Additionally, and if necessary, in the alternative, as set forth herein, OMTC Defendants have materially breached the terms of the Settlement Agreement. The OMTC Defendants failed to comply with the requirements of the Settlement Agreement by refusing to turn over documents described therein on or before April 6, 2020, and have failed to make the payment due on or before April 7, 2020. Additionally, despite receiving notice of default and being given an opportunity to cure, the OMTC Defendants have wholly failed and refused to do so. Therefore, Plaintiff seeks recovery of the amounts due and owing under the Settlement Agreement, $11,150,000.00, plus pre-judgment interest, post-judgment interest, attorney's fees, and costs of Court.

**Count III- Breach of Contract – OMTC, Inc. and Dennis James Rogers II**

34.     OMTC's conduct and default as set forth herein constitutes a breach of contract under the terms of the Notes. Further, Rogers's conduct and default as set forth herein constitutes a

breach of the Guaranty Agreements as Rogers failed to pay the amounts due and owing on the Notes upon OMTC's default. The OMTC Defendants have failed to comply with their contractual obligations to Funderz and have failed and refused to pay the amounts due and owing under the terms of the Notes. As a result, Funderz seeks actual and special damages, at law or in equity, within the jurisdictional limits of this Court, including pre-judgment interest from the date of default, post-judgment interest, reasonable and necessary attorney's fees, and costs of court.

### Count IV -- Breach of Guaranty -- Dennis James Rogers II

35.    Rogers's conduct and default as set forth herein constitutes a breach of the Guaranty Agreements. Rogers failed to pay the amounts due and owing to Funderz under the terms of the Notes upon OMTC's default thereunder, despite Funderz's performance under the terms of the underlying Notes. As a result, Funderz seeks actual and special damages, at law or in equity, within the jurisdictional limits of this Court, including pre-judgment interest from the date of default, post-judgment interest, reasonable and necessary attorney's fees, and costs of court.

### Count V – Fraud/Fraud in the Inducement/Fraud by Nondisclosure – OMTC, Inc. and Dennis James Rogers II

36.    The OMTC Defendants committed fraud by promising Funderz that the Funds would be used for OMTC's business purposes and, more specifically that the Funds would be used to purchase the Product from Calumet Specialty Product Partners, LP and would then sell the Product to OMTC's customers, paying Funderz under the specific terms set forth in the Notes. However, the OMTC Defendants, with full knowledge of Funderz's expectations and the falsity of the OMTC Defendants' promises made in the Agreements, entered into the Agreements intending to use the Funds for personal use rather than for the express business purpose set forth in the Agreements. Funderz advanced the Funds in reliance upon the OMTC Defendants' promises and with the expectation that the OMTC Defendants would perform as promised. As a result of the

OMTC Defendants' malicious, intentional, and flagrant conduct, Funderz seeks actual and special damages, including exemplary damages, at law or in equity, within the jurisdictional limits of this Court, including pre-judgment interest from the date of default, post-judgment interest, reasonable and necessary attorney's fees, and costs of court. Additionally, Plaintiff expressly states that it seeks recovery of exemplary damages under Tex. Civ. Prac. & Rem. Code §41.003 to the fullest extent allowed by law due to the OMTC Defendants', malicious, fraudulent, and wrongful conduct.

### Count VI – Conversion – OMTC Defendants

37.     The Funds advanced by Plaintiff to the OMTC Defendants were private property owned by Plaintiff and intended to secure the purchase of certain fuel products from Calumet Specialty Product Partners, LP. These funds were private property marked towards specific collateral. The OMTC Defendants converted the funds for the own personal benefits. Therefore, the OMTC Defendants' wrongful conversion has caused actual and special damages to Plaintiff in an amount within the jurisdictional limits of this Court, plus pre-judgment and post-judgment interest, court costs, attorney's fees, and exemplary damages as applicable.

### Count VII – Texas Theft Liability Act/Civil Theft – The OMTC Defendants

38.     The OMTC Defendants committed theft by misrepresenting the intended use of the funds advanced under the Notes and then by secreting the funds to other accounts and creditors. Their theft by deception constitutes a wrongful act under Tex. Civ. Prac. & Rem. Code §134.001 *et seq*. Therefore, the OMTC Defendants are liable to Plaintiff for actual and special damages of at least $10,000,000.00, found by the trier of fact plus statutory awards found in Tex. Civ. Prac. & Rem Code §134.005 and exemplary damages.

### Count VIII – Chapter 41 Exemplary Damages – The OMTC Defendants

39.     The OMTC Defendants exhibited fraudulent and malicious conduct which allows

Plaintiff to seek recovery of exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code §41.003.

Further, Plaintiff seeks recovery for the maximum amount of exemplary damages allowed by law as

the statutory caps found under Tex. Civ. Prac. & Rem. Code §41.008 do not apply because the

OMTC Defendants' conduct consists of actions found in various sections of the Texas Penal Code,

including §32.45 and Chapter 31 (theft) and 32 (fraud). Therefore, Plaintiff seeks recovery of

exemplary damages *of at least* two times the actual damages, plus $750,000.00.

### Count XI - Attorneys' Fees

40.     Upon OMTC Defendants' failure to pay the balance owing under the Agreements,

Funderz placed said contracts in the hands of the undersigned attorney for enforcement and has

agreed to pay said attorney reasonable attorney's fees for his services for which OMTC

Defendants have become liable by the terms of the Agreements as well as by virtue of Chapter

38 of the Texas Civil Practice and Remedies Code.

### Count X – Constructive Trust As to Site Development Group, Inc.

41.     SDG is the recipient of at least $4.8 million that was paid to it as a result of fraud by

the OMTC Defendants. Therefore, SPG, as the recipient of monies procured by fraud, should not be

permitted to retain the funds. Plaintiff requests the Court institute a constructive trust against SPG

regarding the funds in SPG's possession which it received from the OMTC Defendants.

### Count XI – Fraudulent Inducement - OMTC, Inc. and Dennis James Rogers II

42.     The OMTC Defendants committed fraud in the inducement by representing to

Plaintiff that they had a large ultra-low sulfur diesel purchase from Calumet Specialty for which

they intended to use the Funds advanced under the Note. This representation, which forms the entire

basis of the Notes entered into between Plaintiff and the OMTC Defendants (along with the

associated ancillary agreements) was not only a misrepresentation, but outright false. OMTC

App. 017

Defendants' conduct constituted a knowing, malicious misrepresentation of fact that the OMTC Defendants were fully aware was relied upon by the Plaintiff in entering into the Notes.

43.    Rather than coming clean, the OMTC Defendants compounded their misrepresentation by misrepresenting their ability to repay the $15 million settlement amount and by misrepresenting their authority to turn over documents for the Rogers Group, Inc., an important and highly negotiated portion of the Settlement. These false representations were relied upon by Plaintiff in settling their claims, which included a potential recovery of exemplary damages well in excess of $20 million, forgoing the litigation and settling at $15 million. This further delayed Plaintiff's recovery efforts, exacerbating the fraud by withholding Plaintiff's funds for a longer period of time. Therefore, Plaintiff seeks recovery of actual and special damages, pre-judgment interest, post-judgment interest, attorney's fees and costs of court. Additionally, Plaintiff expressly states that it seeks recovery of exemplary damages under Tex. Civ. Prac. & Rem. Code §41.003 to the fullest extent allowed by law due to OMTC Defendants, OMTC, Inc. and Dennis James Rogers II's, malicious, fraudulent, and wrongful conduct.

**Count XII- Money Had and Received – All Defendants**

44.    OMTC Defendants hold money, which in equity and good conscience, belongs to the Plaintiff. However, OMTC Defendants have failed and refused to turn over the funds to Plaintiff.

**Count XIII – Turnover of Pledged Assets – OMTC, Inc. and Dennis James Rogers II**

45.    Pursuant to the terms of the Security Agreements, Collateral Assignments, and Pledge Agreements, OMTC, Inc. and Dennis James Rogers II pledged certain assets to Funderz in the event they defaulted under the Notes and Guaranty Agreements.  As OMTC, Inc. and Dennis James Rogers II have unquestionably defaulted under the terms of the Notes and Guaranty

App. 018

Agreements, Plaintiff seeks turnover of the collateral set forth in the Security Agreements,

Collateral Assignments, and Pledge Agreements in compliance with their terms.

## VI. CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Funderz seek the following relief and requests that:

    a.   Defendants be cited to appear and answer herein;

    b.   Recovery from Defendants, jointly and severally, of actual and special damages within the jurisdictional limits of this Court, including recovery of pre-judgment interest at the contract rate from the date of default, October 15, 2019;

    c.   Recovery from the OMTC Defendants, jointly and severally, of exemplary damages resulting from OMTC Defendants malice and fraud pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code;

    d.   Reasonable attorneys' fees, costs, and expenses incurred in bringing this action;

    e.   Post-judgment interest as allowed by law; and

    f.   Specific performance of the terms of the Settlement Agreement;

    g.   Any and all such further and additional relief, whether at law or in equity, to which Funderz demonstrates itself entitled.

Respectfully submitted,

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
817-338-1616 Phone
817-338-1610 Fax
mstout@padfieldstout.com
mdg@padfieldstout.com
bgibbons@padfieldstout.com

/s/ Mark W. Stout
Mark W. Stout
State Bar I.D. # 24008096
Matthew D. Giadrosich
State Bar I.D. # 24074274
Brandon J. Gibbons
State Bar I.D. #24082516

*Attorneys for Plaintiff*

### Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all parties who have made an appearance herein by and through counsel via e-service.

/s/ Brandon J. Gibbons
Brandon J. Gibbons

App. 020

TOLIVER

# U.S. District Court
## Northern District of Texas (Dallas)
## CRIMINAL DOCKET FOR CASE #: 3:24-cr-00170-K-1

---

Case title: USA v. Rogers

Date Filed: 05/02/2024

---

Assigned to: Judge Ed Kinkeade

**Defendant (1)**
**Dennis James Rogers, II**

represented by **Daniel Kevin Hagood**
Daniel K Hagood PC
3710 Rawlins Street
Suite 1600
Dallas, TX 75219
214-720-4040
Fax: 469-310-8993
Email: dhagood@hagoodhunt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Alexandra Hunt**
Daniel K Hagood PC
3710 Rawlins Street
Suite 1600
Dallas, TX 75219
214-720-4040
Email: ahunt@hagoodhunt.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

15 U.S.C §§ 77q(a) and 77x Securities
Fraud
(1)
15 U.S.C §§ 77q(a) and 77x Securities
Fraud
(2)

**Disposition**

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

**Disposition**

App. 021

None

## Highest Offense Level (Terminated)

None

## Complaints                                         Disposition

None

---

## Plaintiff

**USA**                          represented by   **Marcus J Busch-DOJ**
                                                  US Attorney's Office
                                                  1100 Commerce St
                                                  Suite 300
                                                  Dallas, TX 75242
                                                  214-659-8642
                                                  Fax: 214-659-8809
                                                  Email: marcus.busch@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: US Attorney's Office*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/02/2024 | 1 | FELONY INFORMATION as to Dennis James Rogers, II (1) count(s) 1-2. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. (axm) (Entered: 05/03/2024) |
| 05/02/2024 | 2 | WAIVER OF INDICTMENT by Dennis James Rogers, II. (axm) (Entered: 05/03/2024) |
| 05/02/2024 | 3 | PLEA AGREEMENT as to Dennis James Rogers, II. (axm) (Entered: 05/03/2024) |
| 05/02/2024 | 5 | Factual Resume as to Dennis James Rogers, II. (axm) (Entered: 05/03/2024) |
| 05/08/2024 | 6 | ELECTRONIC ORDER as to Dennis James Rogers, II: Initial Appearance and Arraignment Hearings (Guilty Plea) set for 8/27/2024 09:00 AM in US Courthouse, Courtroom 1306, 1100 Commerce St., Dallas, TX 75242-1310 before Magistrate Judge Rebecca Rutherford. (Ordered by Judge Ed Kinkeade on 5/8/2024) (chmb) (Entered: 05/08/2024) |
| 08/27/2024 | 9 | ELECTRONIC Minute Entry for proceedings held before Magistrate Judge Rebecca Rutherford: Initial Appearance as to Dennis James Rogers, II held on 8/27/2024. Attorney Appearances: AUSA - Marcus Busch; Defense - Daniel Hagood. (No exhibits) Time in Court - :05. (Court Reporter: Rachel Erickson) (kaf) (Entered: 08/27/2024) |
| 08/27/2024 | 10 | ELECTRONIC Minute Entry for proceedings held before Magistrate Judge Rebecca Rutherford: Guilty Plea at Arraignment Hearing as to Dennis James Rogers, II held on 8/27/2024. On the record in open Court, the defendant consented to proceed before the |

| | | |
|---|---|---|
| | | U.S Magistrate Judge, to conduct the guilty plea as required by Rule 11, F.R.Cr.P. Plea entered by Dennis James Rogers II (1) Guilty Count 2. Defendant is released on conditions. Attorney Appearances: AUSA - Marcus Busch; Defense - Daniel Hagood. (No exhibits) Time in Court - :24. (Court Reporter: Rachel Erickson) (kaf) (Entered: 08/27/2024) |
| 08/27/2024 | 11 | Report and Recommendation on Guilty Plea as to Dennis James Rogers, II. (Ordered by Magistrate Judge Rebecca Rutherford on 8/27/2024) (kaf) (Main Document 11 replaced to amend name on document on 8/28/2024) (kaf). (Entered: 08/27/2024) |
| 08/27/2024 | 12 | ORDER Setting Conditions of Release as to Dennis James Rogers II (1) PR. (Ordered by Magistrate Judge Rebecca Rutherford on 8/27/2024) (kaf) (Entered: 08/27/2024) |
| 08/27/2024 | 13 | Sentencing Scheduling Order as to Dennis James Rogers, II: Presentence Investigation Report due by 11/6/2024. Objections to Presentence Investigation Report due by 11/20/2024. Presentence Investigation Addendum due by 12/4/2024. Objections to Presentence Investigation Addendum due by 12/11/2024. Sentencing set for 12/18/2024 09:30 AM before Judge Ed Kinkeade. (Ordered by Judge Ed Kinkeade on 8/27/2024) (chmb) (Entered: 08/27/2024) |
| 08/27/2024 | 14 | (Document restricted to court users only) Receipt for Surrender of Passport as to Dennis James Rogers, II. (kaf) (Entered: 08/28/2024) |
| 09/03/2024 | 15 | NOTICE OF ATTORNEY APPEARANCE by Alexandra Hunt (Clerk to Set Designation as: Retained) appearing for Dennis James Rogers, II (Filer confirms contact info in ECF is current.) (If sealed documents that you are authorized to see were previously filed by U.S. Pretrial Services or U.S. Probation, you will require assistance to gain access to them and any related filings. Please call the clerk at 214.753.2240 during business hours to request access.) (Hunt, Alexandra) (Entered: 09/03/2024) |
| 09/11/2024 | 16 | ORDER Accepting 11 Report and Recommendations re: Guilty Plea as to Dennis James Rogers II (1) (Ordered by Judge Ed Kinkeade on 9/11/2024) (chmb) (Entered: 09/12/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/16/2024 09:41:27 | | | |
| PACER Login: | DavidMilleP3 | Client Code: | VCRogers |
| Description: | Docket Report | Search Criteria: | 3:24-cr-00170-K |
| Billable Pages: | 3 | Cost: | 0.30 |

App. 023

9/16/2024, 9:42 AM



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED-USDC-NDTX-DA
'24 MAY 2 PM 2:21
KR

UNITED STATES OF AMERICA

v.

· DENNIS JAMES ROGERS II

NO.

3 - 2 4 C R 0 1 7 0 - K

## PLEA AGREEMENT

Dennis James Rogers II, the defendant; Daniel K. Hagood, the defendant's

attorney; and the United States of America (the government) agree as follows:

 1.     **Rights of the defendant**:  The defendant understands that the defendant

has the rights:

    a.    to plead not guilty;

    b.    to have a trial by jury;

    c.    to have the defendant's guilt proven beyond a reasonable doubt;

    d.    to confront and cross-examine witnesses and to call witnesses in the
defendant's defense; and

    e.    against compelled self-incrimination.

 2.     **Waiver of rights and plea of guilty**:  The defendant waives these rights

and pleads guilty to the offenses alleged in Counts 1 and 2 of the information, charging

violations of 15 U.S.C. §§ 77q(a) and 77x, that is, securities fraud.  The defendant

understands the nature and elements of the crimes to which the defendant is pleading

guilty, and agrees that the factual resume the defendant has signed is true and will be

submitted as evidence.

      3.    **Sentence**:  The maximum penalties the Court can impose include for each

Count which, at the discretion of the court, may be served consecutively to each other:

        a.    imprisonment for a period not more than five years;

        b.    a fine not to exceed $250,000, or twice any pecuniary gain to the
defendant or loss to the victim(s);

        c.    a term of supervised release of not more than 3 years, which may be
mandatory under the law and will follow any term of imprisonment.
If the defendant violates the conditions of supervised release, the
defendant could be imprisoned for the entire term of supervised
release;

        d.    a mandatory special assessment of $100;

        e.    restitution to victims or to the community, which is mandatory under
the law, and which the defendant agrees may include restitution
arising from all relevant conduct, not limited to that arising from the
offense of conviction alone;

        f.    costs of incarceration and supervision; and

        g.    forfeiture of property.

      4.    **Immigration consequences**:  The defendant recognizes that pleading

guilty may have consequences with respect to the defendant's immigration status if the

defendant is not a citizen of the United States.  Under federal law, a broad range of

crimes are removable offenses.  The defendant understands this may include the offense

to which the defendant is pleading guilty, and for purposes of this plea agreement, the

**Plea Agreement—Page 2**

defendant assumes the offense is a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea of guilty may entail, even if the consequence is the defendant's automatic removal from the United States.

5.      **Court's sentencing discretion and role of the Guidelines**: The defendant understands that the sentence in this case will be imposed by the Court after consideration of the United States Sentencing Guidelines. The guidelines are not binding on the Court, but are advisory only. The defendant has reviewed the guidelines with the defendant's attorney, but understands no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case. The defendant will not be allowed to withdraw the defendant's plea if the defendant's sentence is higher than expected. The defendant fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court.

6.      **Defendant's agreement**. The defendant shall not knowingly provide false information to the U.S. Probation Office (USPO), the Court, or the government relating to the offense(s) of conviction and all relevant conduct, or any information the defendant must provide related to this agreement.

7.      **Mandatory special assessment**:  The defendant agrees to pay the U.S. District Clerk the amount of $200 unless the Court finds the defendant indigent in satisfaction of the mandatory special assessment(s) prior to sentencing.

8.      **Financial Obligations**: The defendant understands that any financial obligation imposed by the Court for restitution, fines, or special assessments is due and payable immediately.  In the event the Court imposes a schedule for payment, the defendant agrees that such a schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation.  The defendant understands that the defendant has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court.  The defendant further agrees as follows:

      a.  The defendant agrees that the financial statement, with any supporting documents, the defendant provides to the USPO may be shared with the Court and the government.

      b.  The defendant shall submit to interviews by the government and the USPO regarding the defendant's capacity to satisfy any fine, restitution, or special assessment.

      c.  The defendant expressly authorizes the United States Attorney's Office to immediately obtain a credit report on the defendant to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Plea Agreement—Page 4

9.      **Restitution**: The defendant agrees that the Court is authorized to order, and the defendant agrees to pay, restitution for all loss resulting from the offense(s) of conviction and all relevant conduct, in an amount to be determined by the Court. Defendant agrees that, for purposes of this paragraph, restitution for relevant conduct shall include all acts and omissions described in USSG § 1B1.3(a)(1)(A) and (1)(B), as well as all acts and omissions that were part of the same course of conduct or common scheme or plan, regardless whether the grouping rules in USSG § 3D1.2 might apply to computation of the advisory imprisonment range.  The defendant understands that should the Court order that restitution be paid jointly and severally with others who are required to pay restitution for the same loss to victims that credit may not be received for all payments made by any other person with joint and several liability.  The defendant agrees that any restitution ordered to be paid jointly and severally remains the responsibility of the defendant until the defendant has paid the defendant's ordered amount of restitution in full or the respective victim has been paid in full.

10.      **Government's agreement**:  The government will not bring any additional charges against the defendant based upon the conduct underlying and related to the defendant's plea of guilty.  The government will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. The government will dismiss, after sentencing, any remaining charges in the pending information.  This agreement is limited to the United States Attorney's Office for the Northern District of Texas and does not bind any other federal, state, or local prosecuting

Plea Agreement—Page 5

App. 028

authorities, nor does it prohibit any civil or administrative proceeding against the
defendant or any property.

11.     **Violation of agreement**:  The defendant understands that if the defendant
violates any provision of this agreement, or if the defendant's guilty plea is vacated or
withdrawn, the government will be free from any obligations of the agreement and free to
prosecute the defendant for all offenses of which it has knowledge, including the
reinstatement of charges dismissed pursuant to this plea agreement.  In the event of such
a violation, vacatur, or withdrawal, the defendant waives all objections based upon delay
in prosecution.  If the plea is vacated or withdrawn for any reason other than a finding
that it was involuntary, the defendant also waives all objections to the use against the
defendant of any information or statements the defendant has provided to the
government, and any resulting leads.

12.     **Voluntary plea**:  This plea of guilty is freely and voluntarily made and is
not the result of force or threats, or of promises apart from those set forth in this plea
agreement.  There have been no guarantees or promises from anyone as to what sentence
the Court will impose.

13.     **Waiver of right to appeal or otherwise challenge sentence**: The
defendant waives the defendant's rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C.
§ 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture in an
amount to be determined by the Court.  The defendant further waives the defendant's
right to contest the conviction, sentence, fine and order of restitution or forfeiture in any
collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C.

Plea Agreement—Page 6

§ 2255.  The defendant, however, reserves the rights (a) to bring a direct appeal of (i) a

sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at

sentencing, (b) to challenge the voluntariness of the defendant's plea of guilty or this

waiver, and (c) to bring a claim of ineffective assistance of counsel.

14.     **Representation of counsel**:  The defendant has thoroughly reviewed all

legal and factual aspects of this case with the defendant's attorney and is fully satisfied

with that attorney's legal representation.  The defendant has received from the

defendant's attorney explanations satisfactory to the defendant concerning each

paragraph of this plea agreement, each of the defendant's rights affected by this

agreement, and the alternatives available to the defendant other than entering into this

agreement.  Because the defendant concedes that the defendant is guilty, and after

conferring with the defendant's attorney, the defendant has concluded that it is in the

defendant's best interest to enter into this plea agreement and all its terms, rather than to

proceed to trial in this case.

15.     **Entirety of agreement**:  This document, including any Supplement filed

contemporaneously, is a complete statement of the parties' agreement and may not be

modified unless the modification is in writing and signed by all parties.  This agreement

supersedes any and all other promises, representations, understandings, and agreements

that are or were made between the parties at any time before the guilty plea is entered in

court.  No promises or representations have been made by the United States except as set

forth in writing in this plea agreement.

**Plea Agreement—Page 7**

AGREED TO AND SIGNED this 2nd day of MAY _____, 2024.

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_Marcus Busch_
Marcus Busch
Assistant United States Attorney
Texas State Bar No. 03493300
1100 Commerce Street, Third Floor
Tel: 214-659-8642
Fax: 214-659-8809
Email: marcus.busch@usdoj.gov

_Chad Meacham_
Chad Meacham
Section Chief

I have read or had read to me this plea agreement and have carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree to it.

_____        04 - 26 - 24
Dennis James Rogers II              Date

I am the defendant's attorney. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge and belief, my client's decision to enter into this plea agreement is an informed and voluntary one.

_____        4/24/24
Daniel K. Hagood                    Date
Attorney for Defendant

**Plea Agreement—Page 8**